## STATE OF CONNECTICUT *v.* JAMES J. KELLY
### (13242)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued February 9—decision released July 26, 1988

*Kenneth Rosenthal,* special public defender, with whom, on the brief, was *Jon C. Blue,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, for the appellee (state).

GLASS, J. In November, 1985, the defendant was tried by a jury on a four count information charging him with kidnapping in the second degree in violation of General Statutes § 53a-94,[1] robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[2] larceny in the second degree in violation of General Statutes § 53a-123 (a) (1),[3] and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2).[4] He was acquitted of the robbery charge and convicted on the remaining three counts. The trial court imposed consecutive sentences of twenty years on the kidnapping count, ten years on the larceny count and one year on the sexual assault count, for a total effective sentence of thirty-one years of incarceration.

---

[1] "[General Statutes] Sec. 53a-94. KIDNAPPING IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of kidnapping in the second degree when he abducts another person.

"(b) Kidnapping in the second degree is a class B felony."

[2] General Statutes § 53a-134 (a) (3) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument."

[3] General Statutes (Rev. to 1985) § 53a-123 (a) (1) provides: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which is two thousand dollars or less."

[4] "[General Statutes] Sec. 53a-73a. SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent."

The defendant claims that the trial count erred in: (1) closing the courtroom over his objection in violation of his constitutional right to a public trial; (2) excluding entirely evidence of prior complaints and ongoing psychological problems bearing directly on the complainant's credibility, state of mind, powers of perception and recollection in violation of his rights to confront his accusers, to present a defense and to due process of law; (3) denying him access to all records of the complainant's psychiatric problems, rape crisis counseling, and the testimony she had given in a similar sexual assault case, in violation of his rights to due process, confrontation and compulsory process under the state and federal constitutions; (4) denying his motions to strike testimony and for a judgment of acquittal and his request for an adverse inference instruction based on the destruction of an alleged second statement of the complainant to the New Haven police; and (5) denying his motion for judgment of acquittal on the larceny count. We find no error.

The jury could reasonably have found that on April 1, 1985, the complainant drove to New Haven from her parent's home in New Jersey to visit friends, and spent the night with her boyfriend at Yale University. The previous year she had been a student at the university. On April 2, at about 6 a.m., she left her boyfriend's room, planning to drive to her place of employment in New Jersey. Her car was parked in a nearby parking lot. As she walked toward her car the defendant began to follow her, and when she reached her car and turned around, he was standing next to her. The defendant told her that his name was Pete, that she was pretty, and that he wanted her to be his girlfriend. While repeatedly putting his hand in his pocket he told her that he had a knife and could make her do whatever he wanted. He asked her if she had any money and she gave him ten dollars, hoping that he would then leave

her alone. Instead, the defendant pushed her against the car, tried to kiss her and grabbed roughly at her breasts and thighs. She unsuccessfully tried to push him away. She did what the defendant ordered because she thought that he had a knife and was afraid of him. As he ordered, she opened the door, let him in and also entered the car herself in order to drive.

The complainant drove the car to a stoplight near the exit of the parking lot. At that point the defendant ordered her to let him drive. They changed seats and he drove the car to the area of the Yale-New Haven Hospital where he stopped in front of a house. He stated that he lived there and wanted to go inside, but could not find a parking space. He stopped the car in the driveway next to the house and forced the complainant to perform fellatio. Afterwards, as the defendant was driving around, the complainant persuaded him to stop at a pay telephone because she had told him that if she did not arrive at work on time, her employer would come looking for her. The complainant intended to call the police, but the defendant followed her to the telephone. She called her boyfriend's room and spoke with his roommate. After hanging up she asked the defendant for permission to make another call, but the defendant became angry and told her to get back into the car, saying "No more phone calls."

Because she was afraid of the defendant the complainant got back into the car, but jumped out at the next traffic light and ran along the street toward Yale-New Haven Hospital. The defendant followed her in the car and then on foot. When he caught her he stated, "Nobody ever runs away from me," and then pinned her against a wooden wall surrounding a construction site, kissed her and touched her breasts and inner thighs.

While the complainant and the defendant were struggling, Patricia Bougourd drove by, came to a stoplight and noticed them struggling. She motioned to the complainant and unlocked the passenger door of her car. The complainant broke away from the defendant, ran to Bougourd's car and got inside. Bougourd drove the complainant to the nearby YWCA, and called the police.

Officer Hilda Kilpatrick responded to Bougourd's call. She interviewed the complainant as well as Bougourd and then broadcasted on the police radio a description of the defendant, the complainant's car and its license number. Soon thereafter, another police officer observed the defendant at the parking lot where the complainant had parked her car overnight, stopped him, patted him down and found the complainant's car keys in his pocket. The complainant and Bougourd were brought to the parking lot and they both identified the defendant as the person from whom the complainant had escaped. The defendant was arrested.

I

The defendant first claims that the trial court erred in closing the courtroom in violation of his constitutional right to a public trial. Prior to trial, on November 7, 1985, the state moved, pursuant to General Statutes § 54-86f[5] (rape shield statute), to close the hearing on

---

[5] At the time of the offense on April 2, 1985, the rape shield statute, General Statutes § 54-86f, provided: "ADMISSIBILITY OF EVIDENCE OF PRIOR SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the prior sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her prior sexual conduct, or (3) evidence of prior sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate

the defendant's motion to offer evidence of a prior sexual assault on the complainant. After a hearing, the trial court granted the state's motion. The state thereafter proceeded with the presentation of its case and the direct examination of the complainant was conducted in open court and was completed on November 14, 1985. Prior to the commencement of her cross-examination, the trial court ordered the closure of the courtroom. Neither the defendant nor any other interested party had appealed the court's November 7 closure order.

As a threshold issue we must determine whether the defendant's closure claim is reviewable. Under § 54-86f, evidence of prior sexual misconduct is "admissible only after a hearing on a motion to offer such evidence containing an offer of proof." In anticipation of the defendant's motion to put in issue the complainant's prior sexual conduct, the state exercised its right to have such a hearing held in camera. A hearing held pursuant to § 54-86f is subject to the provisions of General Statutes § 51-164x which provides that "[a]ny person affected by a court order which prohibits any person from attending any session of court . . . shall have the right to appeal such order by filing a petition for review with the appellate court within seventy-two

the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

hours from the issuance of such court order." Thus, the defendant and the general public had seventy-two hours in which to appeal to the Appellate Court the order of the trial court issued on November 7, 1985.

This statutory right to an expedited review of a closure order provides immediate protection of a defendant's right to a public trial. While the record indicates that the defendant objected to the closure order, it also indicates that he failed to pursue the statutory remedy provided by the legislature to challenge the validity of the order. We recognize that "[t]he failure to provide a public trial deprives the defendant of a fundamental constitutional right and the public of access to an open judicial forum." *State* v. *Sheppard,* 182 Conn. 412, 418, 438 A.2d 125 (1980); *State* v. *Frazier,* 185 Conn. 211, 230–31, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). Since the record does not reflect any justifiable reason for the defendant's failure to pursue the statutory remedy of an expedited appeal, we would ordinarily decline to review the claim that the trial court erred in ordering closure. "A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way." *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957). The defendant's claim, however, raises an issue of constitutional dimension and we find that it comes within one of the exceptions in *State* v. *Evans,* 165 Conn. 61, 65, 327 A.2d 576 (1973). "We refer to that situation delineated in *Evans* which allows review where the record, as here, is sufficiently complete for us to consider the claims on the merits and the claims involve a fundamental constitutional right." *State* v. *Godek,* 182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

Turning to the substance of the defendant's claim, we note that the United States Supreme Court has articulated the following standards regarding closure. "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984). "Under *Press-Enterprise,* the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller* v. *Georgia,* 467 U.S. 39, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).[6]

In the present case, the court granted the state's motion for a closed rape shield hearing and stated: "Obviously, in light of the Legislature's adoption of the Statute, the policy which they are trying to pursue . . . the rights that they are trying to protect are best served by a hearing in camera and could well be damaged without a hearing in camera." The trial court

---

[6] In *Waller* v. *Georgia,* 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), the trial court, in the absence of statutory authority, ordered closure of a pretrial suppression hearing over the objection of the defense. After the hearing and trial, the defendant was acquitted of some charges and convicted of others. The Georgia Supreme Court affirmed the convictions. After determining the closure order was issued without findings and was too broad, the United States Supreme Court reversed and remanded the case for a determination by the state court of what portions, if any, of the suppression hearing may be closed, followed by a new suppression hearing and a new trial if the hearing results in the suppression of material not suppressed at the first trial.

acted within its discretion in closing the hearing on the rape shield motion. "If the state, over the defendant's objection, seeks to have a trial closed during the testimony of designated witnesses, it must furnish to the court some information to demonstrate a compelling need to deny his right to a public trial. The court may then conduct an evidentiary hearing into the propriety of excluding the public, unless it is satisfied from the examination of an affidavit, or from a colloquy with counsel or from the testimony of witnesses, that there exists a factual justification for exclusion of the public. . . . On the basis of a factual showing, the court can then determine what kind of exclusionary order, if any, is warranted. It is axiomatic that the order should be reasonably limited to respond only to the compelling need for closure." *State* v. *Sheppard,* supra, 417–18.

At the closed hearing on November 14, 1985, the evidence presented consisted principally of the complainant's testimony. She testified that in February, 1984, during her freshman year at Yale University, she was walking back to her dormitory one night when she was approached by someone who dragged her into an alley and sexually assaulted her with a razor blade. She was cut on the breast and thighs and the razor blade was placed in her vagina. Ultimately, Walter Bolivar was arrested and charged with sexual assault and unlawful restraint. After a public jury trial he was acquitted. At his trial Bolivar asserted an alibi defense and he and his girlfriend testified in support of that defense. The defendant Kelly sought to examine the complainant about the Bolivar incident, in order to compare it with the circumstances of the charges against him, and to have Bolivar and his girlfriend testify that the February, 1984 incident did not occur.

In its argument in support of closure the state directs attention to the evidence about the Bolivar incident.

We note, however, that Bolivar's trial was public and aside from a general reference to the rape shield statute, the trial court made no findings as required by *Waller* v. *Georgia*, supra. Moreover, while this case was pending the complainant participated in an interview that resulted in a newspaper article in the New Haven Register where she discussed both cases.

We conclude, on the basis of the record, that the November 7 closure order was improper. Ordinarily, this case would be returned to the trial court for a *Waller* type hearing. Because, however, the defendant claims that the court erred in excluding from his trial the evidence that was considered at the closed hearing, the admissibility of the excluded evidence will be considered in this appeal. Only if the excluded evidence is found to be admissible is a new trial required. The admissibility of this evidence will be addressed in the following discussion.

## II

The defendant's second claim is that the trial court erred in the blanket exclusion of evidence bearing directly on the complainant's credibility, state of mind, powers of perception and recollection, prior complaints and on going psychological problems, in violation of his rights to confront his accuser, to present a defense and to due process. This claim is related to the defendant's third claim that the trial court erred in denying him access to all records concerning the complainant's psychiatric problems, rape crisis counseling, and her testimony in the Bolivar case, and to all other records relating to that case, in violation of his rights of due process, confrontation and compulsory process under the state and federal constitutions. Essentially, the defendant claims that the trial court erred in excluding from the trial the testimony given by the complainant at the closed hearing.

A

There is no dispute that in the adversarial setting of a trial, the accused has a right under the confrontation clause "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the [State's] witness." *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Ouellette,* 190 Conn. 84, 101–103, 459 A.2d 1005 (1983). It is also undisputed that the accused has an equal right under the compulsory process and due process clauses "to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).

The defendant argues that "[t]he jury was exposed to the full force of the State's case against Defendant, presented largely through the testimony of a complainant who enjoyed all means of advantage over Defendant, and who was articulate, extremely intelligent, equipped with matter of fact explanations for even the most bizarre of circumstances, experienced at testifying, and blessed with a surface veneer of sincerity, polish and utter normality." To counteract the complainant's appearance of "utter normality," the defendant sought access to the records of the Bolivar case, and the right to obtain and use the transcript in that case in the examination and cross-examination of the complainant. Additionally, the defendant sought to present as witnesses Walter Bolivar and his alibi witness for the testimony that Bolivar was acquitted of the charge. The evidence was excluded as irrelevant.

It is well settled that "[i]n exercising the right to present witnesses in his own defense, the defendant

'must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' *Chambers* v. *Mississippi,* [410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]; *State* v. *Mastropetre,* [175 Conn. 512, 521, 400 A.2d 276 (1978)]. The constitution does not require that the defendant be permitted to present every piece of evidence he wishes, although exclusionary rules of evidence cannot be applied 'mechanistically' to deprive the defendant of his rights. *Chambers* v. *Mississippi,* supra. If the proffered evidence is not relevant, however, the defendant's right to confrontation is not affected and the evidence was properly excluded. *State* v. *Vaughn,* 448 So. 2d 1260 (La. 1983), on rehearing, 448 So. 2d 1266, 1267 (La. 1984); *State* v. *Patnaude,* [140 Vt. 361, 369, 438 A.2d 402 (1981)]; see General Statutes § 54-86f (4); *State* v. *Mastropetre,* supra, 517.

" 'As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. " ' "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." ' " *State* v. *Lombardo,* 163 Conn. 241, 243, 304 A.2d 36 (1972).' *State* v. *Mastropetre,* supra, 517." *State* v. *Cassidy,* 3 Conn. App. 374, 383, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

The record reveals no facts that warrant importing the evidence from the Bolivar trial into this case. The fact that Bolivar was acquitted is of no probative value in this case. This is particularly true since Bolivar asserted an alibi defense. It is impossible to determine why he was acquitted by the jury. If speculation is to be indulged, however, it is plausible that the jury accepted Bolivar's alibi. The jury could have believed

that the complainant was sexually assaulted, but that Bolivar was elsewhere as he claimed. Bolivar's acquittal does not make the charge of sexual assault against him or the charge against the defendant a "recent contrivance," "imagination," or "sexual fantasy," as discussed in *State* v. *Ouellette,* supra, 98, 103.

Moreover, it must be remembered that the complainant is the victim in this case. "The relevant conduct was that between the defendant and the victim. Unless she had raised a false claim before, her conduct with another man had no bearing on her conduct with this defendant or on the credibility of her testimony in this case." *State* v. *Cassidy,* supra, 382. There is no evidence, nor has the defendant proffered any evidence, that the complainant was not sexually assaulted as she claimed in the Bolivar case. Like the trial court, we agree that the Bolivar testimony was irrelevant to this case. Since the trial court properly excluded the proffered testimony of Bolivar and his alibi witness, there was no error in denying the defendant access to the Bolivar trial transcript. Furthermore, our resolution of this issue leads us to the conclusion that although the trial court erred in ordering closure, such error was harmless. The testimony that the defendant sought to have set forth in a public forum was ruled irrelevant and was not considered by the jury.[7]

## B

In addition to her testimony regarding the Bolivar case, the complainant testified at the closed hearing

[7] We distinguish this case from *State* v. *Sheppard,* 182 Conn. 412, 438 A.2d 125 (1980), where we found error and ordered a new trial. In *Sheppard,* the public had been excluded during the testimony of the two complaining witnesses pertaining to the charges against the defendant. In this case the public was not excluded during the complaining witness' testimony pertaining to the offenses for which the defendant was charged. Rather, the public was excluded from hearing the complaining witness testify regarding matters the court determined to be inadmissible evidence. Absent the

that she had participated in psychiatric therapy and counseling from February, 1984, to mid April, 1985, as a result of the Bolivar incident. She also testified about two experiences that reflected her reaction to the Bolivar sexual assault. First, one night in March, 1984, after consuming some alcohol she began crying and screaming and her roommates took her to the emergency room of the Department of University Health at Yale University, where she was treated. Second, in November, 1984, because of an overdose of codeine enhanced tylenol, she testified that she was taken by friends and admitted to the psychiatric ward at Yale-New Haven Hospital where she was treated.

Pursuant to the defendant's subpoenas and supplementary requests for discovery, numerous documents relating to the complainant's psychiatric therapy and counseling following the Bolivar case were entered as sealed court exhibits. The defendant argued that "he was not only seeking materials revealing inconsistencies or blatant falsehoods, but also material relating to [the complainant's] psychological instability, alterations and embellishment of recollection over time, distortions of reality, misperceptions of words and actions of others, psychological needs and problems with respect to interpersonal relations, preoccupation with sexual issues, symptoms of hysterical personality disorder, and gaps, discrepancies or other evidence of unreliability with respect to [the complainant's] account in the Bolivar case." The complainant waived the applicable privileges for the limited purpose of allowing an in camera inspection of her records by the trial court. The trial court took a recess, examined the exhibits in camera, and thereafter reconvened court and denied the defendant access to the exhibits.

closure order the public would have heard the excluded testimony even though under the court's ruling it would have been excluded from the jury.

"Connecticut has a broad psychiatrist-patient privilege that protects the confidential communications or records of a patient seeking diagnosis and treatment. C.G.S. §§ 52-146d, 52-146e; see *State* v. *Toste,* 178 Conn. 626, 629, 424 A.2d 293 (1979); *State* v. *White,* 169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025 [96 S. Ct. 469, 46 L. Ed. 2d 399] (1975). The privilege covers not only communications between the patient and psychiatrist, but also all communications relating to the patient's mental condition between the patient's family and the psychiatrist and his staff and employees, as well as records and communications prepared at mental health facilities. C.G.S. § 52-146d." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 12.9.1. We have had occasion to address the "[problem] of attempting to reconcile the privilege with the right of confrontation in respect to disclosure of records of psychiatric treatment of a witness in a criminal case. *State* v. *Bruno,* 197 Conn. 326, 329–32, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986); *State* v. *Esposito,* 192 Conn. 166, 177–80, 471 A.2d 949 (1984); *State* v. *Storlazzi,* 191 Conn. 453, 455–63, 464 A.2d 829 (1983)." *State* v. *Pierson,* 201 Conn. 211, 225, 514 A.2d 724 (1986).

In *State* v. *Storlazzi,* supra, 459, we stated that "[t]he linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material 'especially probative of the ability to "comprehend, know and correctly relate the truth" '; *United States* v. *Lindstrom,* 698 F.2d 1154, 1165–66 (11th Cir. 1983); so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation. As in the case of admissibility of such records, access to records bearing on 'the mental unsoundness of a witness (i.e., relating to a trait importing in itself a defective power of observation,

recollection or communication), at or around the time of trial or of the occurrence about which he is to testify'; *State* v. *Piskorski,* [177 Conn. 677, 736, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979)]; should be granted to the defendant. And as in the case of admissibility of such records, however, access to 'such [records] must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it'; id., 737; and to weigh that value against the interest in confidentiality of the records. Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis."

Applying the standards of *Storlazzi,* our examination of the record fails to "sufficiently disclose material 'especially probative of the [complainant's inability] to "comprehend, know and correctly relate the truth . . . ." ' " Id., 451. During the course of the extensive cross-examination of the complainant, the defendant was able to show to the jury several gaps, omissions and contradictions in her testimony. Many of the gaps, omissions and contradictions were the complainant's deliberate efforts to avoid embarrassment and are not probative of her ability to comprehend, know and correctly relate the truth so as to warrant a breach of the confidentiality of her privileged records by disclosing them to the defendant.

We recognize that the documents subpoenaed by the defendant were not in the possession of the state's attorney, nor were the documents examined by the state's attorney or the defendant. Nonetheless, the rationale of *Pennsylvania* v. *Richie,* 480 U.S. 39, 59, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987) (prosecutor's decision on disclosure is final unless defendant becomes aware, after he has made a general request for excul-

patory material, that other exculpatory material was withheld and brings it to the court's attention), regarding discovery in general and in particular the in camera inspection of the documents by the trial court in this case, leads us to conclude, after our own examination of the documents, that the trial court did not err in denying the defendant access to the documents in question.

## III

Next, the defendant claims that the trial court erred in denying his motions to strike testimony and for a judgment of acquittal and his request to give an adverse inference instruction based on the destruction of the complainant's statement to the New Haven police.

The complainant testified that she initially reported this incident to Officer Hilda Kilpatrick at the YWCA. Kilpatrick took her to the parking lot where her motor vehicle was parked, and there she and Patricia Bougourd identified the defendant. The complainant was then taken to the New Haven police station where she gave a formal taped statement to Officer Winkler Christensen. The complainant was told that the statement would be typed and that she would have to come back at a later date to sign the statement. In this statement the complainant failed to mention that the defendant had forced her to perform fellatio. She testified that she omitted this information because of embarrassment and fear.

The complainant also testified that during the month of April, 1985, she attempted to contact Christensen several times by calling the police station, and that he was never in when she called. On April 29, 1985, she went to the police station, reviewed and signed her typewritten April 2, 1985 statement. She noticed the omission of fellatio from the statement and that she had failed to include in her statement the facts that: (1) she had made a telephone call to her boyfriend's

room; (2) when the defendant caught up to her near the hospital, he repeatedly put his hand in his pocket as though he was handling a knife; and (3) when the defendant caught her he stated, "Nobody ever runs away from me." She testified that she did not mention any of these omitted matters because she had been told by the police that the case was probably not going to come to trial and that she was in a hurry and was undecided about telling about fellatio. When she decided to tell the police about the omitted matters, she attempted, without success, to contact Christensen. Finally, she testified that on May 3, 1985, she drove to New Haven from New Jersey, went to the police station and gave a second statement that included the omitted matters. This statement was not taken by Christensen or anyone known to or identifiable by the complainant.

In November, 1985, when the complainant met with the assistant state's attorney to prepare for trial, it was discovered that the second statement had never been forwarded to his office. The assistant state's attorney also learned that neither the tape nor the transcript could be found despite a diligent search by the police. The complainant gave a physical description of the officer who took her statement, but none of the officers resembling her description remembered taking the statement. Defense counsel was notified of the loss of the statement. At the request of defense counsel, the missing statement was reconstructed as accurately as possible. On November 8, 1985, Detective Mary Fish retraced the route that the complainant stated the defendant took in her car on the date of the incident.

At the trial the defendant conducted an extensive cross-examination of the complainant, developing gaps, inconsistencies and omissions in her various statements. After argument, the trial court denied the defendant's motion to strike the complainant's testimony or dismiss

the charges pursuant to Practice Book § 755.[8] The court also denied the defendant's request for an adverse inference charge based on the state's failure to produce the complainant's second statement given on May 3, 1985.

"This court has considered similar claims involving the loss of a witness's tape-recorded statement in several recent decisions. See *State* v. *Milum,* 197 Conn. 602, 500 A.2d 555 (1985); *State* v. *Myers,* [193 Conn. 457, 479 A.2d 199 (1984)]; *State* v. *Shaw,* 185 Conn. 372, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982). In those cases we employed a balancing test whereby the imposition of sanctions for nondisclosure ' "depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other." ' *State* v. *Shaw,* supra, 386, quoting *United States* v. *Miranda,* 526 F.2d 1319, 1329 (2d Cir. 1975), cert. denied, 429 U.S. 821, 97 S. Ct. 69, 50 L. Ed. 2d 82 (1976); see also *State* v. *Milum,* supra, 617; *State* v. *Myers,* supra, 467. Since there exists no constitutional right of access to the statements of a witness for the prosecution, the burden of showing prejudice rests with the defendant. *State* v. *Vessichio,* 197 Conn. 644, 662, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); *State* v. *Milum,* supra, 616." *State* v. *Mullings,* 202 Conn. 1, 7–8, 519 A.2d 58 (1987).

---

[8] "[Practice Book] Sec. 755.——FAILURE TO COMPLY WITH ORDER "If the prosecuting authority elects not to comply with an order of the judicial authority to deliver to the defendant any statement of a witness who has testified or such portion thereof as the judicial authority may direct, the judicial authority shall strike from the record the testimony of the witness, and the trial shall proceed unless the judicial authority, in his discretion, upon motion of the defendant, determines that the interests of justice require that a mistrial be declared."

We have reviewed the transcript pertaining to this claim and are not persuaded that the trial court erred in denying the defendant's motion to strike the testimony of the complainant, in denying the defendant's motion for a judgment of acquittal, or in declining to give an adverse inference instruction based on the complainant's lost statement. There is no claim, nor is there any evidence, that the prosecution or any police officer deliberately lost, misplaced or destroyed the statement. In fact, when the assistant state's attorney discovered that a second statement had been given by the complainant and that it had not been forwarded to his office and that it could not be found by the police, counsel for the defendant was immediately notified. Moreover, the missing statement was reconstructed at the defendant's request. "Where, as here, the loss of [the statement] was the result of negligence, the question then becomes to what extent, if any, the defense was prejudiced by [its] loss. *State* v. *Myers,* supra, 469; *State* v. *Shaw,* supra." *State* v. *Palmer,* 206 Conn. 40, 59, 536 A.2d 936 (1988).

On cross-examination of the complainant, the defendant questioned her extensively about her first statement given on April 2, 1985, and the statement, given on November 8, 1985, reconstructing the lost May 3, 1985 statement. Additionally, the defendant examined Kilpatrick, Christensen and Fish about the statement that each officer had taken from the complainant. The cross-examination of the complainant and the cross-examination and direct examination of the officers who had taken statements from the complainant were unrestricted. We note that there is no claim that the trial court in any way restricted cross-examination of the complainant or the presentation of witnesses by the defendant with respect to this aspect of the case.

Thus, we find that the defendant has not met his burden of showing prejudice by the failure of the trial court

to grant his motion to strike the testimony of the complainant. See *State* v. *Palmer,* supra, 60; *State* v. *Santangelo,* 205 Conn. 578, 588–89, 534 A.2d 1175 (1987); *State* v. *Mullings,* supra, 10. Neither can the defendant prevail on his additional claim that the state's failure to produce the second statement violated his fifth and sixth amendments rights. "[T]here exists no constitutional right of access to the statements of a witness for the prosecution . . . ." (Citations omitted.) *State* v. *Mullings,* supra, 8.

## IV

Finally, the defendant claims that the trial court erred in denying his motion for judgment of acquittal on the larceny count in which he was charged with theft of the complainant's motor vehicle. The defendant challenges the sufficiency of the evidence to meet the requirement that the state prove the elements of the crime charged beyond a reasonable doubt.

The jury was presented with the following evidence in support of the larceny charge: (1) the complainant's testimony that the defendant took possession of her vehicle and drove off with it; (2) a police officer saw the defendant at the parking lot walking away from the complainant's vehicle after the assault had occurred; and (3) the complainant's car keys were found in the defendant's pocket. "Each essential element of the crimes charged must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Though the jury may 'draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture.' *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). ' "Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot 'constitutionally stand,' as it is violative of due process under the fourteenth amend-

ment. *Jackson* v. *Virginia,* 443 U.S. 307, 317–18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State* v. *Kish,* 186 Conn. 757, 768, 443 A.2d 1274 (1982)." (Footnote omitted.) *State* v. *Haddad,* 189 Conn. 383, 387–88, 456 A.2d 316 (1983).' " *State* v. *Brown,* 199 Conn. 14, 21–22, 505 A.2d 690 (1986).

While the evidence in this case was substantially circumstantial, it was nonetheless sufficient, if believed by the jury, to support a verdict of guilty of larceny in the second degree as charged. "[T]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Haddad,* supra, 390. " 'In reviewing the sufficiency of the evidence this court must construe the evidence in the light most favorable to sustaining the verdict; *State* v. *Ferrell,* 191 Conn. 37, 46, 463 A.2d 573 (1983); and then determine whether the jury "could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978); see *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).' *State* v. *Cimino,* 194 Conn. 210, [211,] 478 A.2d 1005 (1984). ' "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson* v. *Louisiana,* 406 U.S. [356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)]." (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).' *State* v. *Morrill,* 197 Conn. 507, 512, 498 A.2d 76 (1985)." *State* v. *Brown,* supra,

22–23. We find that the evidence summarized was sufficient to support the verdict of the jury.

There is no error.

In this opinion HEALEY, SHEA and HULL, Js., concurred.

CALLAHAN, J., concurred in the result.