## STATE OF CONNECTICUT *v.* ALEX KELLY

Dupont, C. J., and O'Connell, Foti, Lavery and Spear, Js.

Argued April 4—officially released April 15, 1997*

---

* April 15, 1997, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Ralph G. Elliot, Elias A. Alexiades* and *Alan Neigher*, in support of the petitions.

*Opinion*

DUPONT, C. J. This matter concerns two joint petitions for review of a trial court closure order, one filed by the Hartford Courant and the Stamford Advocate and the other by LWWI Broadcasting, Inc., doing business as television station WTNH News Channel 8 (WTNH) and Rainbow Connecticut Holdings, Inc., doing business as News 12 Connecticut. The petitions were filed pursuant to General Statutes § 51-164x[1] and Practice Book § 4166.[2] The closure order of the trial court,[3] rendered on its own motion,[4] stems from the defendant's

[1] General Statutes § 51-164x provides in relevant part: "(a) Any person affected by a court order which prohibits any person from attending any session of court . . . whether at a pretrial or trial stage, shall have the right to appeal such order by filing a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order."

[2] Practice Book § 4166 provides in relevant part: "(a) Except as provided in paragraph (b), any person affected by a court order which prohibits the public or any person from attending any session of court may seek review of such order by filing . . . a petition for review with the appellate court within seventy-two hours after the issuance of the order."

[3] The media entities seeking to overturn the trial court's closure order filed motions in the trial court to intervene at the trial court hearing on its own motion, which motions were denied. They were permitted, however, to argue at the trial court hearing. The media entities have not attempted to appeal from the denials of their motions but any question as to intervention is moot in view of our vacation of the trial court order.

[4] The order reads in relevant part as follows: "It is ORDERED that

"1. The public including all news media be excluded from all hearings regarding information supplied to news media representatives regarding the 11/15/96 Hartford Courant article on State v. Kelly which is the subject of the defendant's February 3, 1997 Amended Motion to Dismiss and that,

"2. All files, affidavits, documents, transcripts, notes, evidence, motions and other materials on file with the court and filed or to be filed in connection with said February 3, 1997 Amended Motion to Dismiss, regarding information supplied to any news media representative regarding the 11/15/96 Hartford Courant article on State v. Kelly be sealed to the public including all news media and that,

"3. No party, counsel, witnesses or prospective witnesses in this matter shall provide, reveal, discuss or disseminate said sealed material . . . ."

amended motion to dismiss the pending charges against him of kidnapping in the first degree and sexual assault in the first degree. A previous trial involving the same charges ended in a mistrial. The closure concerns a newspaper article published after the mistrial was declared. After a hearing held in this court to review the closure order, pursuant to Practice Book § 4166 (a), we vacate the order of the trial court.[5]

The defendant's amended motion to dismiss alleged that "either the state, law enforcement authorities or persons associated with the complainants leaked information to the media about new allegations against Mr. Kelly" and that "the state, and/or its agents, including the complainant's attorney, have made prejudicial public statements which were disseminated in the local and national media," which actions frustrate the defendant's ability to obtain a fair trial.

The court, in barring the news media and the public from hearings regarding the information alleged by the defendant to have been supplied to the media, made certain findings.[6]

[5] In accordance with Practice Book § 4166, a hearing was held at 10 a.m. on April 4, 1997, the fifth business day after the day on which the certificate of completion provided for by § 4019 (c) was filed with the appellate clerk. The decision to vacate the order was announced by the appellate clerk on April 4, 1997. The petitioners were represented by counsel and participated in the hearing. Neither the state nor the defendant sought to be heard at the hearing but the defendant had filed a written statement with the trial court, consenting to the court's granting of its own motion for closure.

[6] "6. This order is based on the following findings herein made by this court.

"A. These orders are necessary to preserve an interest which is determined to override the public's interest in attending such proceeding or in viewing such materials.

"B. Said interest is determined by this court to be that of the defendant, Alex Kelly, to select, impanel and be tried by a jury in Stamford, Connecticut that is as free from influence of adverse publicity as is possible.

"7. This court concludes that this order is no broader than necessary to protect such overriding interest.

"8. This order is based upon Practice Book § 895."

Practice Book § 895 provides that, in general, a judicial authority shall

The issues to be decided in that portion of the hearing ordered closed concern the sources for information in a certain article by the Hartford Courant and whether there was any prosecutorial misconduct involved.

A right of public access to pretrial criminal proceedings has been recognized by the United States Supreme Court and this court. See *Press-Enterprise* v. *Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) ; *State* v. *Franzese*, 23 Conn. App. 433, 580 A.2d 538 (1990). The test set out in *Press-Enterprise* for ordering a court closure requires that the trial court (1) articulate specific findings after a hearing, (2) find that the closure is essential to preserve "higher values," (3) narrowly tailor the order to serve the interest sought to be protected, (4) find a "substantial probability" that the interest sought to be protected will be prejudiced by the open courtroom and that closure would prevent the prejudicial effect, (5) consider reasonable alternatives to closure and conclude that they would not adequately protect the defendant's right to a fair trial.[7] *Press-Enterprise* v. *Superior Court*, supra, 13–15.

At the hearing[8] concerning the trial court's sua sponte order of closure, the court considered the criteria estab-

not order closure but may if it concludes that such order is necessary to preserve an interest that is determined to override the public's interest in attending court. The order shall be no broader than necessary and the judicial authority shall articulate the overriding interest being protected and shall specify its finding.

[7] Practice Book § 895 (c) provides in relevant part that the "judicial authority shall, on the record in open court, articulate the overriding interest being protected and shall specify its findings underlying such order. . . ."

[8] The trial court entered certain documents, on its own initiative, into evidence at its hearing on its closure motion. Although the court indicated that the parties would be able to submit documents as exhibits, according to the trial court transcript, no other documents were entered as exhibits and no testimony was taken. It is unclear whether the trial court hearing of March 19, 1997, was evidentiary in nature as no evidence of the parties was actually offered or received.

An evidentiary hearing is not required if a trial court is satisfied from affidavits, the colloquy with counsel or the testimony of witnesses that there

lished in *Press-Enterprise*. The court stated that the reason for the closure order was to preserve the defendant's interest in selecting, impaneling and being tried by a jury in Stamford that is as free from the influence of adverse publicity as possible. The court, however, did not explain how closing a portion of the hearing concerning the defendant's amended motion to dismiss would protect that "higher value," the second prong of *Press-Enterprise*. The portion of the hearing on the defendant's motion to dismiss that the court ordered closed concerns the source for the Hartford Courant article. A determination of the source does not involve evidence concerning the truth or the contents of the allegations in the article regarding uncharged misconduct. The hearing would primarily concern whether there was prosecutorial misconduct involved in leaking information to the press and whether that involvement would warrant dismissal of the charges against the defendant. It is unclear how this portion of the hearing would be prejudicial to the defendant's interest in having an unbiased jury pool for his impending trial on the previous charges. The third prong of *Press-Enterprise* is met because only a portion of the hearing was ordered closed in order to conform to the court's view of the prejudice to the defendant.

The court found, as to the fourth prong of *Press-Enterprise*, that there is a substantial probability that the defendant's rights to a fair trial would be prejudiced and that closure would prevent the information contained in the newspaper article from being further disseminated to the current jury pool. The court, in discussing the fifth prong of *Press-Enterprise*, noted that it was not aware of any alternatives to closure that

is a factual justification for the exclusion of the public from the courtroom. *State* v. *Kelly*, 208 Conn. 365, 373, 545 A.2d 1048 (1988). Ordinarily, however, specific findings are made after an evidentiary hearing. See *State* v. *Manfredi*, 4 Conn. App. 247, 493 A.2d 242 (1985).

would accomplish this goal although it had considered alternatives. The court indicated that it had considered sequestration of the jury but had denied the request for sequestration, and there was no method for sequestering a jury pool during pretrial proceedings. The court indicated that extensive voir dire would be permitted, but that if the publicity had infected the jury pool, the court would reconsider the defendant's motion for a change of venue. The court concluded, however, that voir dire was not a satisfactory alternative to closure in light of the recent publicity. Admonition of the jury was also considered but the court indicated that such instructions would not be adequate to correct the current publicity problem. The court considered a "gag order" but held that such an order would substantially impact on first amendment rights and would not be appropriate. The court noted that voluntary restraint by the media was another option that it had considered. The court also considered a continuance but stated that it would not continue the case because the charges had been pending for some time.

Although the court considered the criteria of the *Press-Enterprise* case, most of its statements regarding the likelihood of prejudice to the defendant's right to an impartial jury and the possible alternatives to closure are conclusory. The federal constitution's first amendment right of public access to courts cannot be overcome by a conclusory assertion that publicity might deprive the defendant of a fair trial. See *Press-Enterprise* v. *Superior Court,* supra, 478 U.S. 13–14. Moreover, the portion of the hearing on the amended motion to dismiss to which the closure order applies, i.e., the source of the November 15, 1996 Hartford Courant article and whether prosecutorial misconduct was involved, does not have a direct impact on the issue of whether the defendant can obtain a fair trial, with an impartial jury, on the pending charges.

The necessity for closure, given the tenuous connection between what might be elicited at a hearing on the defendant's motion to dismiss and the ability to obtain an impartial jury in Stamford, is especially questionable in light of the extensive prior publicity concerning the defendant and the charges against him, including the extensive publicity about the Hartford Courant article itself. The trial court summed up the prior dissemination of the Hartford Courant article by stating that the "cat is out of the bag."

Furthermore, questions of alleged prosecutorial misconduct, which impinge on the integrity of the judicial system, would also militate against closure because the public's confidence in the criminal justice system could be undermined by closure of the court to consider such issues. Closure of a courtroom should be sparingly granted because public hearings and public trials vindicate an important societal interest in the judicial system and openness of the courts enhances the basic fairness of that system, which is essential to public confidence in it. *Ostolaza* v. *Warden*, 26 Conn. App. 758, 769, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

The trial court's closure order of March 19, 1997, is vacated.

In this opinion the other judges concurred.