STATE OF CONNECTICUT *v.* LAWRENCE HUBBARD
(11044)

DUPONT, C. J., DALY and SCHALLER, Js.

Argued June 1—decision released July 27, 1993

*Donald D. Dakers,* special public defender, with whom, on the brief, was *Christine Perra,* special public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Michael A. Pepper,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), assault of a victim sixty years or older in the third degree in violation of General Statutes § 53a-61a, and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a).

The defendant claims that the trial court improperly (1) refused to review, in camera, police records concern-

ing two previous sexual assaults, and (2) limited the direct examination of the defendant's father.[1] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On September 28, 1989, at about 9 p.m., a sixty-seven year old female drove her automobile to her condominium in Meriden. Her dog was in the car with her. As she drove into the condominium complex, she noticed a white male wearing blue jeans, a gray sweater and a gray hat. The headlights of her car illuminated his face. She described him as thin, twenty to twenty-five years old and approximately six feet to six feet, two inches tall. After parking her car, she walked her dog to a grassy area behind the automobile. She was grabbed from behind by a white male who placed his hands over her eyes and told her, "Don't holler and you won't get hurt." He then dragged her across the parking area and down a grassy embankment bordering the parking lot. At the bottom of the embankment, he threw her to the ground near some bushes, struck her in the face, and sexually assaulted her. After the attack, her assailant fled from the premises. She recognized him as the man she had observed earlier when her headlights flashed on him as she drove into the complex. The victim crawled up the embankment and, upon reaching her condominium, immediately dialed 911. When the police arrived, she gave them a written statement and thereafter went to the emergency room of the Meriden-Wallingford Hospital.

More than a year later, on October 17, 1990, the defendant was arrested for an unrelated incident that

---

[1] At oral argument and in his reply brief, the defendant abandoned his claim that his rights were violated by the intentional erasure by the Meriden police of the 911 call from the victim, and by the trial court's denial of the defendant's motion to strike the victim's testimony in light of that erasure, in view of the Supreme Court's recent decision in *State* v. *Cain,* 223 Conn. 731, 613 A.2d 804 (1992).

occurred within one mile of the victim's condominium complex. The information that the police obtained during this investigation led them to suspect that the defendant may have been responsible for the September, 1989 assault. On October 26, 1990, the victim went to the Meriden police department to view photographs in an attempt to identify her assailant. An array of photographs of eight white males with similar characteristics was shown to the victim. She identified a photograph of the defendant as her assailant. On the basis of this identification, the defendant was arrested for the September, 1989 assault. The defendant was subsequently convicted and this appeal ensued.

In addition to the sexual assault involved in this case, the defendant was arrested for two separate attempted sexual assaults that took place on August 21, 1990. A Meriden police report dated August 29, 1990, indicated that these two sexual assault attempts might fit into a pattern of cases dating back to early 1989. Specifically, two incidents took place in February, 1989, that involved white females who were outdoors alone at night, and were assaulted after being attacked from behind by their assailants.

I

The defendant first claims that the trial court should have reviewed, in camera, the police records of the two assaults that occurred in February, 1989, to determine if they contained exculpatory material necessary to his defense. There was an arrest and prosecution of another individual for one of the February, 1989 assaults, which resulted in the acquittal of that individual. No arrest has been made on the other February, 1989 assault.

In the present case, the police reports of the two February assaults were presented to the trial court under seal. The defendant asked the trial court to exam-

ine these records in camera. The defendant claimed that he needed the information in these records to establish a third party's guilt for the offenses for which he was charged. It was the defendant's position that another individual fitting his description might have committed the sexual assault in this case.

To trigger an in camera review of records, the defendant must first demonstrate some reasonable likelihood that the records contain information relevant to the case. *State* v. *James,* 211 Conn. 555, 579, 560 A.2d 426 (1989); *State* v. *Hayes,* 20 Conn. App. 737, 743, 570 A.2d 716, cert. denied, 215 Conn. 802, 574 A.2d 218 (1990). In *Hayes,* the defendant claimed that the records were relevant to a claim that someone other than he had committed the crimes charged. "Evidence of such third party culpability is a component of a defendant's due process right to present a defense. *State* v. *Echols,* [203 Conn. 385, 392, 524 A.2d 1143 (1987)]. For third party evidence to be admissible, however, it must directly connect the third party to the crime, it must be more than . . . enough to raise a bare suspicion of such third party culpability. Id., 392." *State* v. *Hayes,* supra, 743.

Thus, in the present case, "in order for the defendant to trigger an in camera review of the records, he was required to establish a reasonable likelihood that the records contained material directly connecting [a third party] to the crimes charged." Id., 744–45. This he failed to do.

The defendant relies on the facts of *Siemon* v. *Stoughton,* 184 Conn. 547, 440 A.2d 210 (1981), and *State* v. *Echols,* supra, to demonstrate that he is entitled to an in camera review to establish his defense of third party guilt. Like the defendants in *Siemon* and *Echols,* this defendant sought to be apprised of the factual details of the earlier assaults and to obtain the names and

addresses of the complainants therein, so that he could interview them. The defendant's reliance on these two cases is misplaced, however, as both involved the admissibility of evidence of third party guilt, and did not reach the issue of in camera inspection of erased police records.

In the present case, no evidence of a third party look-alike was produced at trial. The trial court found that the defendant had failed to establish a reasonable likelihood that the erased records contained exculpatory information directly connecting a third party to the crime for which this defendant has been convicted. The trial judge stated that although there is language in the police report that would suggest some connection between five well documented cases fitting a general pattern of sexual assault, the report does not contain sufficient information to demonstrate a reasonable likelihood that the crime in this case was committed by a third person. The trial judge noted that no precise description was available to link a third party to the present case. The police report revealed that only a general range of information as to the assailant's height, age and build had been provided by the victim in this case. Thus, there is no basis for inferring that the perpetrators of the February offenses were responsible for this offense since no arrest has been made for one and the accused in the other has been acquitted.[2]

We conclude that the defendant has failed to demonstrate a reasonable likelihood that the records would directly connect a third party to the crime in this case. On the contrary, the records would indicate that a third party was not connected to the crime charged since the only individual arrested for either of the February, 1989 assaults was acquitted.

[2] We note that it is unclear whether there was one or more perpetrators responsible for the two February, 1989 assaults.

The trial court properly refused to conduct an in camera review.

## II

The defendant next claims that the trial court improperly limited the direct examination of his father. The trial court sustained objections to the introduction of evidence of the defendant's working hours since they did not relate specifically to the date of the assault.

"In exercising the right to present witnesses in his own defense, the defendant 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' *Chambers* v. *Mississippi,* [410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]; *State* v. *Mastropetre,* [175 Conn. 512, 521, 400 A.2d 276 (1978)]." *State* v. *Cassidy,* 3 Conn. App. 374, 383, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985); *State* v. *Kelly,* 208 Conn. 365, 375–76, 545 A.2d 1048 (1988). The United States constitution does not authorize the defendant to present every piece of evidence he desires, although exclusionary rules of evidence cannot be applied "mechanistically" to deprive the defendant of his rights. *Chambers* v. *Mississippi,* supra; *State* v. *Kelly,* supra, 376. If the evidence submitted is not relevant, however, the defendant's right to confrontation is not affected and the evidence should be excluded. *State* v. *Kelly,* supra.

"As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. *State* v. *Lombardo,* 163 Conn. 241, 243, 304 A.2d 36 (1972); *State* v. *Mastropetre,* supra, 517.

*State* v. *Cassidy,* [supra]." (Internal quotation marks omitted.) *State* v. *Kelly,* supra; *State* v. *James L.,* 26 Conn. App. 81, 83, 598 A.2d 663 (1991).

The defendant claims, for the first time on appeal, that the questions posed to the defendant's father were relevant as evidence of custom and habit. The defendant was employed by his father in an automobile service station in September, 1989. He claims that his father's testimony was necessary to establish that he could not have committed this crime because he had worked evenings during September and, thus, it would have been impossible for him to have been at the victim's condominium complex when she was sexually assaulted at approximately 9 p.m. on September 28, 1989. This basis for admitting the testimony, however, was not raised before the trial court.

Testimony as to the habit or practice of doing a certain thing in a certain way is evidence of what actually occurred under similar circumstances or conditions. *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 348, 398 A.2d 1180 (1978); *Caslowitz* v. *Roosevelt Mills, Inc.,* 138 Conn. 121, 125, 82 A.2d 808 (1951); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988), § 72a. "Evidence of a regular practice permits an inference that the practice was followed on a given occasion." *Puro* v. *Henry,* 188 Conn. 301, 312, 449 A.2d 176 (1982).

At trial, during direct examination of the defendant's father, defense counsel made several attempts to establish the defendant's working hours in September, 1989. The state objected to each attempt on the ground that only the hours on September 28 were relevant. The trial court sustained each objection. The defendant took several general exceptions to the rulings made against him, but he failed to inform the trial court of his grounds for the exceptions. " 'If a defendant . . . wishes to

except to a ruling excluding evidence which was objected to only generally, he must avail himself of the provisions of [Practice Book § 288] and state his claim of admissibility. . . .' " *State* v. *De Santis,* 178 Conn. 534, 540, 423 A.2d 149 (1979); see also *Raino* v. *Supermarkets General Corporation,* 28 Conn. App. 56, 59, 609 A.2d 1047, cert. denied, 223 Conn. 924, 614 A.2d 825 (1992); *O & G Industries, Inc.* v. *Mizzoni,* 23 Conn. App. 19, 23, 578 A.2d 672 (1990). By not raising the ground for his claim of admissibility, the defendant has failed to preserve this evidentiary claim for appellate review.[3]

The defendant seeks to overcome this deficiency by relying on the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). This court will review an unpreserved claim under this doctrine only where that claim is of constitutional magnitude, alleging the violation of a fundamental right. Id., 239–40; *State* v. *McClain,* 23 Conn. App. 83, 90, 579 A.2d 564, cert. denied, 216 Conn. 822, 581 A.2d 1056 (1990). Here, the

---

[3] The pertinent questions and subsequent colloquy were as follows:

"[Public Defender]: What were your son's hours back in September of 1989?

"[State's Attorney]: I object to that. I think we are talking about a particular date and time. I don't think it is relevant what the general hours were, Your Honor.

"[The Court]: Sustain the objection.

"[Public Defender]: What were the hours that he worked throughout the month of September, 1989?

"[State's Attorney]: Objection.

"[The Court]: Sustain the objection.

"[Public Defender]: I am going to claim that one, Your Honor.

"[The Court]: You may have an exception.

"[Public Defender]: All right, exception.

"[Public Defender]: Did your son work the same hours throughout the month of September 28, 1989?

"[State's Attorney]: I object to that.

"[The Court]: Sustain the objection.

"[Public Defender]: Exception, Your Honor."

defendant's claim is an evidentiary one, and thus not deserving of review under *State* v. *Golding,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.