STATE OF CONNECTICUT *v.* ANDREW BELIVEAU
(12390)

DUPONT, C. J., and HEIMAN and HENNESSY, Js.

Argued September 27—decision released November 29, 1994

*Martin Zeldis,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Dennis O'Connor,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1)[1] and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A).[2] On appeal, the defendant asserts that the trial court improperly (1) restricted his cross-examination of various witnesses by refusing to permit him to question them concerning portions of the victim's statement to the police, thereby violating his constitutional right to

---

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

confrontation, (2) permitted the use of hearsay evidence under the doctrine of constancy of accusation, (3) instructed the jury on the doctrine of constancy of accusation, and (4) failed to inform the defendant of possible noncompliance with his subpoena of the victim's counseling records. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. At 11 p.m. on July 19, 1991, the nineteen year old victim began working her shift at the Cumberland Farms located at the intersection of Routes 4 and 69 in Burlington. She was scheduled to finish her shift at 7 a.m. the next day. The defendant, Andrew Beliveau, had been the store manager for approximately one month and was the victim's supervisor.

At about 2:30 a.m. on July 20, the defendant arrived at the store while the victim was working her shift. When he arrived, two customers were in the store, both of whom were known to the victim. The defendant told the two customers that they had to leave the premises and they did.

When the two customers left the store, the defendant locked the door and put out a sign indicating that the store would be closed for one-half hour. He then began to mop the floor to strip it of wax. The defendant stopped his work and went to a room in the rear of the store. He called the victim to come to that room and, when she responded, he requested that she hold a ladder so that he could climb up into a loft located above a large cooler. The victim complied with his request and the defendant climbed the ladder, holding a flashlight, and entered the loft. The victim then returned to the main part of the store to clean the coffeemaker.

The defendant again called for the victim to come to the back room. This time he asked her to climb the lad-

der to the loft and assist him in removing two pieces of sheetrock that were blocking a surveillance mirror located above the cooler. She complied with his request and climbed the ladder and entered the loft.

When the victim entered the loft, she noted that the only source of light was the flashlight that the defendant had carried up to the loft. She went to the area where the mirror was located and she and the defendant proceeded to remove the two pieces of sheetrock from the wall. The defendant and the victim were on their hands and knees because the ceiling in the loft was low and they could not stand. The defendant told the victim that he wanted to place a surveillance camera behind the mirror because he thought that inventory was being stolen and he hoped that with the use of a camera he would be able to detect the parties that were stealing from the store.

The defendant asked the victim to look through the mirror to the store below in order to help him determine the best angle at which to place the camera. In order to do so, the victim had to lie down on her right side. The defendant then crawled toward her, positioned himself on top of her and kissed her. She told him to stop and backed as far away from him as possible. Despite her protestations, the defendant continued to kiss her. The defendant then put his hand under the victim's shirt and touched her breast. She again asked him to stop. The defendant instead lifted her shirt, unhooked her brassiere and began to kiss her breasts. Again the victim told him to stop, but despite those repeated requests, the defendant continued this course of conduct.

The defendant pushed the victim's shoulder and forced her onto her back on the floor of the loft. The defendant removed the victim's sneakers and unbuttoned and unzipped her jeans. He then proceeded to

pull her jeans down. During this time the victim continued to protest, demanding that the defendant stop. The defendant removed the victim's jeans.

The defendant moved on top of the victim and forced her legs apart with his legs. He then inserted his penis into the victim's vagina. After several minutes, the defendant withdrew and ejaculated on one of the pieces of sheetrock that had been removed from the mirror area. The defendant arose, put on his underpants and trousers that he had removed prior to his assault on the victim, and left the loft.

About five minutes later, the victim dressed and returned to the store area. She made coffee and used a napkin that was lying near the coffee machine to dry her tears so that she could reopen the store. The victim did not see the defendant for the remainder of her shift, nor did she call the police at that time.

The victim returned to work on Monday evening. During her shift, the victim spoke with Trooper Lucian St. Germain of the Connecticut state police who had come into the store to purchase a few items. The victim told St. Germain that she had a problem with the defendant, but did not discuss the nature of the problem.

On the evening of July 23, 1991, or early on July 24, Officer Peter Fernald of the Burlington police department came into the Cumberland Farms store as part of his scheduled patrol. He had been notified by St. Germain that the victim was having problems with the defendant and noticed that the victim appeared upset. He questioned her to determine what had happened, and the victim indicated that her problem concerned the defendant. The victim then began to relate to him the events of July 20, 1991. The victim became upset and Fernald decided to have a female trooper dispatched to the scene.

Later that morning, Fernald returned to the store accompanied by Trooper Christine Terlecky of the Connecticut state police. At that time, the victim recounted in greater detail the events that had occurred at the store on July 20. The victim was then taken to the Troop L barracks in Litchfield, where she gave a fully detailed written statement as to what had occurred between her and the defendant.

## I

The defendant first asserts that he was denied his constitutional right to confrontation[3] when the trial court did not permit him to cross-examine various witnesses regarding a specific portion of the victim's statement to the police. The trial court excluded questions relating to that portion of the statement on the ground of relevancy. We agree with the determination of the trial court.

The following additional facts are necessary to resolve this issue. On July 24, 1991, the victim gave a detailed statement regarding the sexual assault to Terlecky at the Troop L barracks in Litchfield. The vic-

---

[3] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

We note that the defendant claims a violation of his state constitutional rights only by implication and not directly. He has not provided an independent analysis of our state constitutional provision. In the absence of such an analysis, we elect to confine our analysis to a discussion of his rights under the federal constitution. See *State* v. *Vincent,* 229 Conn. 164, 168 n.5, 640 A.2d 94 (1994); *State* v. *Johnson,* 29 Conn. App. 394, 400 n.3, 615 A.2d 512 (1992), appeal dismissed, 227 Conn. 611, 630 A.2d 69 (1993). Our election not to afford such a review here does not indicate that we would have been precluded from reviewing such a state constitutional claim had we elected to do so. *State* v. *Johnson,* supra, 400 n.3; *State* v. *Hernandez,* 28 Conn. App. 126, 131 n.2, 612 A.2d 88, cert. denied, 223 Conn. 920, 614 A.2d 828 (1992).

tim's statement to the police consisted of five pages, the first one and one-quarter pages of which related her experience with a former manager of Cumberland Farms, the defendant's predecessor. The victim alleged that the former manager had made sexual advances toward her, which she rebuffed.

At trial, the defendant attempted to cross-examine the victim regarding her problems with the former manager. The state objected to the line of questioning, claiming that it was irrelevant, that it violated the rape shield laws, and that it exceeded the scope of direct examination. The trial court sustained the state's objection on the ground of relevancy.[4]

---

[4] The defendant provided the following argument in support of his claim of relevance:

"Mr. Zeldis [Defense Counsel]: I would maintain that an event or an incident with a former manager, [the defendant is] the current manager, [an] incident with a former manager, and an incident that's similar in nature to the accusation being made here, is extraordinarily relevant to the question of whether or not there's any transference of any beefs or any problems that she had with [the former manager]. . . . Our contention in part is, and our defense in this case is, that it is consensual sex. It only became nonconsensual sex in her mind, in the victim's mind, as she started considering how she was being abused by managers or former managers or how she was being treated by managers, or former managers of Cumberland Farms. And that does have an impact on whether or not initially at the time that this all happened, it was a consensual act.

\* \* \*

"The Court: I have a problem with your first issue about relevancy. How is that going to assist the trial. What if de facto, [the former manager] made advances?

\* \* \*

"Mr. Zeldis: My response is that there is a link here and the link is to me quite clear. It's not a matter of has this event happened a long time ago, and the question is consent. Now, the question of consent especially the fact[s] as they have been so far presented, and are before the court, the question of consent is going to be a perceptual one. And as a perceptual question, the trier of fact and the court is going to be a—is going to be benefited by what—again, I really would like the witness to step down because I don't—

Later in the trial, the state offered the testimony of Trooper Karl Golden, Jr., of the Connecticut state police. Golden testified that he had spoken with the victim on an unspecified date in July, 1991. At that time, the victim informed him that she was having problems

"The Court [addressing the victim]: Okay. I'm going to ask you to step down just momentarily. Just go into the hallway momentarily please . . . .

"Mr. Zeldis: The question of consent as a perceptual question is going to be something the jury is going to struggle with in deciding; and how you decide, whose perceptions are true perceptions, and whose perceptions are not true perceptions is going to be by hearing evidence surrounding this—people who saw this witness afterwards, people who had contact with this witness before. And one of the things, especially since she ordained it to be the most important thing in that she said first off what had happened with the former manager, I think, that it is probable that some of her problem with Mr. Beliveau perhaps is really a problem with [the former manager]. And that the question of whether or not what happened between Mr. Beliveau and the witness, and the question of whether it was consensual or not is impacted upon her beliefs. Now, if she felt, my goodness, this is what happens to me, I get taken advantage of by Cumberland Farms store managers. A new guy comes on, he's not different than the old guy. I give him sex and then he goes away, and he doesn't want anything to do with me, and blah, blah, blah! That's going through her head.

"The Court: But where does [the former manager] fit in?

"Mr. Zeldis: [The former manager] fits in because after—after the sexual intercourse between Mr. Beliveau and the witness, afterwards—afterwards she spends four days before she decides, as a matter of fact, two and a half days out, she says to the officer she testified to, I don't know if it was rape. Two and a half days out, she's still saying, I don't know if it was a rape. What I'm saying is that it was possible if not probable, that what she was doing was stewing for three or four days about what happened to her with Mr. Beliveau. It wasn't a nonconsensual act at the time that it happened. It became a nonconsensual act as she stewed about it and thought, hey this is a pattern. The pattern is the same as it was before. I got a new manager. I got the same kind of situation coming up, and I don't know if I'm real comfortable with it. That isn't rape though. That is a consensual act that later on she decides is a nonconsensual act.

"The Court: Well, I'll certainly let you get into whether or not she consented. But, Mr.—

"Mr. Zeldis: Well, if I might, Your Honor?

"The Court: Yes, sir.

"Mr. Zeldis: Letting me get into that entails letting me get into what was going on in her mind, and that would include, I submit, the very recent act, or activity, that she had with [the former manager] which is not a sex-

of a sexual nature with an unnamed supervisor. She indicated that this unnamed supervisor was her present manager.

After the state's direct examination of Golden, the defendant requested argument to the court. The defendant claimed that Golden's testimony could have concerned the incident between the victim and the former manager, and that he should be permitted to recall the victim or question Terlecky about the entirety of the victim's statement to the police, including that portion of the statement that dealt with the victim's encounter with the previous store manager. The trial court indicated that it would rule on those issues at the time that they were raised.[5]

---

ual act. Now, as a matter of fact, it really gets almost no place. But it could certainly be construed by the person who it's happening to as a sexual type advance.

* * *

"The Court: I don't see the relevancy. I understand Mr. Zeldis' argument, but I don't see the relevancy for the jury in this particular case under what has been proffered. So I'm going to sustain the objection to the question. You may have an exception."

[5] The transcript of the trial reveals the following colloquy with regard to the defendant's claim concerning the testimony of Golden:

"Mr. Zeldis: Your Honor, may I address the court relative to Trooper Golden's testimony just now.

"The Court: The redirect?

"Mr. Zeldis: The testimony in general. That the testimony of Trooper Golden is that a person unspecified, who is a manager, or sometime in July was a manager, or it happened sometime in July, the manager is probative of—to Your Honor's ruling of yesterday relative to the information regarding [the former manager]. And the complaint that she made relative to [the former manager] apparently was as to an incident that happened midJuly or thereabouts. She said in her statement two weeks prior to the time she made her statement; I believe, that she made her statement on the twenty fourth or the twenty fifth of July; and so, that would put it sometime around, I guess, the tenth or eleventh of July, that this incident apparently happened with [the former manager]. And there's no way of knowing whether or not the complaint is as to [the former manager], or if it is to Mr. Beliveau. So, I think, that opens up the door to anything relative to [the former manager] being presented. I'm suggesting that perhaps the victim needs

Prior to Terlecky's taking the stand, the defendant again argued that he should be able to cross-examine her regarding the first one and one-quarter pages of the victim's statement to the police. His request was again denied on the ground of relevancy. The defendant did not attempt to recall the victim.

The defendant claims that the preclusion of that cross-examination impaired his constitutional right to confrontation. We are unpersuaded.

"There is no dispute that in the adversarial setting of a trial, the accused has a right under the confrontation clause to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the [state's] witnesses." (Internal quotation marks omitted.) *State* v. *Kelly*, 208 Conn. 365, 375, 545 A.2d 1048 (1988). This right does not, however, create in the defendant an unfettered right to offer to the jury any evidence that the defendant wants to introduce. Id., 376, citing *Chambers* v. *Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); see also *State*

to be called back to the stand relative to . . . . And so, I just wanted to alert the court that it is our position that that opens up the door to that information coming in at some further time—well, at least that would be our position. . . . Well, I believe that this opens the door. And since I really don't have anything specific, my intention would be, and I'll just alert the court, my intention would be at the time that I believe that Officer Terlecky testifies, and she's the person who, I believe, took the statement of [the victim]. I would at that time renew my position because I would intend to ask her questions relative to the complaint against [the former manager].

"The Court: Well, as to your future questions for future witness[es], I'll leave that for another time.

\* \* \*

"The Court: Okay. And as far as the testimony that I have, the only reasonable and logical inference that the jury could make, if they find the witness credible, is that the victim—the alleged victim, is talking about the current manager on or about July twentieth.

"Mr. Zeldis: Well, I will probably pick that up when we get to Trooper Terlecky's testimony."

v. *Hubbard,* 32 Conn. App. 178, 184, 628 A.2d 626, cert.
denied, 228 Conn. 902, 634 A.2d 296 (1993). Where the
proffered evidence lacks relevance, its exclusion does
not implicate the defendant's right of confrontation.
*State* v. *Kelly,* supra, 376; *State* v. *Hubbard,* supra, 184.
The defendant does not have a constitutional right to
have irrelevant evidence admitted. *State* v. *Kelly,* supra,
376.

"We have repeatedly observed that a defendant's
right to cross-examination is not absolute and is sub-
ject to reasonable limitation by the [trial] court. . . .
The principal function of confrontation is to secure for
the opponent the opportunity of cross-examination. . . .
The constitutional standard is satisfied if defense coun-
sel, through cross-examination is permitted to expose
to the jury the facts from which jurors, as the sole triers
of fact and credibility, could appropriately draw infer-
ences relating to the reliability of the witness." (Cita-
tions omitted; internal quotation marks omitted.) *State*
v. *Plourde,* 208 Conn. 455, 470–71, 545 A.2d 1071
(1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102
L. Ed. 2d 979 (1989); see also *State* v. *Johnson,* 21 Conn.
App. 291, 296, 573 A.2d 1218 (1990).

"Evidence is admissible when it tends to establish
a fact in issue or to corroborate other direct evidence
in the case. One fact is relevant to another fact when-
ever, according to the common course of events, the
existence of the one, taken alone or in connection with
other facts, renders the existence of the other either
certain or more probable." (Internal quotation marks
omitted.) *State* v. *Ulen,* 31 Conn. App. 20, 28, 623 A.2d
70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993),
quoting *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d
345 (1985).

The record reveals that the trial court afforded to
the defendant a full measure of opportunity, within the

rules of evidence, to produce all the facts that the jury could reasonably use in assessing the victim's credibility. The material excluded by the trial court had no probative value relating to the credibility of the victim. The relevant inquiry for the jury was the determination of what occurred between the victim and the defendant, not between the victim and her former manager. Here, the defendant did not dispute the fact that he had engaged in sexual intercourse with the victim; his only claim was that she had consented. We agree with the trial court that the evidence dealing with the incident with the former manager was irrelevant to the present case and not probative of the victim's credibility. The claim of the defendant is without merit.

## II

The defendant next asserts that the trial court improperly admitted hearsay statements into evidence under the doctrine of constancy of accusation. We are unpersuaded.

The following additional facts are necessary to resolve this issue. St. Germain, Golden, Terlecky and Fernald were permitted to testify to the statements made to them by the victim. The defendant's objection to the testimony of St. Germain on hearsay grounds was overruled on the basis of the concept of constancy of accusation.[6] The defendant did not object to the testimony of the three remaining police officers. On appeal, the defendant contends that the trial court acted improperly in admitting the testimony of all four officers under the doctrine of constancy of accusation.

---

[6] "The constancy of accusation [exception to the hearsay rule] allows a complainant in a sexual offense case to testify that he or she informed others of the attack. These other individuals are then allowed to testify concerning the complaint made by the victim and are permitted to relate the details of the attack as the victim narrated." (Internal quotation marks omitted.) *State* v. *Cardany,* 35 Conn. App. 728, 731, 646 A.2d 291 (1994).

Before we can review the defendant's claim, we must note that the defendant is incorrect in his contention that the testimony of all four officers was admitted under the theory of constancy of accusation. Prior to jury deliberations, the trial court instructed the jury on the doctrine of constancy of accusation as it pertained to the testimony of those four officers. The jurors were then excused to select a foreperson and were told not to begin deliberating until they were given the information and exhibits. At this time, the trial court gave counsel an opportunity to take exception to the instructions given to the jury. The defendant objected to the fact that the constancy of accusation charge mentioned its applicability to the testimony of the four officers. The defendant pointed out that the only witnesses to whom the victim actually recited an accusation were Fernald and Terlecky. The trial court recalled the jury and revised the charge on constancy of accusation, making it applicable only to the testimony of Fernald and Terlecky.[7] Thus, the testimony of St. Germain and Golden was excluded from consideration by the jury.

[7] After counsel called to the court's attention the claim that neither the testimony of St. Germain nor that of Golden was within the ambit of constancy of accusation, the trial court inquired of counsel how he wanted the court to proceed. The following constituted counsel's response:

"Mr. Zeldis: As specific as I can, I would amend Your Honor's instruction to simply either delete the names and just have the constancy instruction stand as it is, and let them decide, or, delete the two names of people we contend did not offer constancy testimony, because their testimony was not of accusation, at least, certainly not as to any accusation of sexual assault."

The trial court reinstructed the jury in part as follows:

"The Court: [W]hen I discussed the theory of constancy of accusation, I mentioned that there was testimony of sexual—of what the young lady purportedly told all four officers, relevant to the alleged sex act. Not all four officers, but only—well, this charge is only relevant to two—Constable Fernald and Trooper Christine Terlecky. Not the other troopers, because it's my recollection—it's yours that controls—that she said nothing to them of the actual sex situation."

The defendant did not take exception to the supplemental charge given in accordance with his request.

We, therefore, examine the defendant's claim as it pertains only to the testimony of Fernald and Terlecky.[8]

## A

The defendant concedes, as he must, that he failed to object on hearsay grounds to the testimony of Fernald and Terlecky. Thus, the defendant failed to preserve properly the claim now asserted for appellate review.

" 'Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. See *State* v. *Rothenberg,* 195 Conn. 253, 263, 487 A.2d 545 (1985). The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial. Id. By failing to object . . . the defendant has failed to preserve this claim. *State* v. *Couture,* 194 Conn. 530, 553–54, 482 A.2d 300 (1984), cert. denied,

---

[8] We conclude that the trial court did not act improperly either by allowing St. Germain and Golden to testify, or in revising its charge to the jury on the issue of constancy of accusation. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. When a constitutional violation is not at issue, the defendant bears the burden of demonstrating the harmfulness of the court's ruling by proving that it is more probable than not that it affected the result of the hearing." (Citations omitted; internal quotation marks omitted.) *State* v. *Leonard,* 31 Conn. App. 178, 190–91, 623 A.2d 1052 (1993).

The defendant has failed to demonstrate that the trial court abused its discretion in permitting St. Germain and Golden to testify to statements made to them by the victim. The testimony of those two troopers was completely innocuous and did not specifically implicate the defendant in any act of sexual misconduct. Any possible harm was avoided by the trial court's supplemental charge to the jury.

469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see also Practice Book §§ 288 and 4185.' " *State* v. *Harrison,* 34 Conn. App. 473, 482, 642 A.2d 36, cert. denied, 231 Conn. 907, 642 A.2d 36 (1994). "We have not yet reached a jurisprudential stage where we require trial judges to be mentally telepathic. Thus, we have consistently declined to review claims based on a ground different from that raised in the trial court"; *State* v. *Ulen,* supra, 31 Conn. App. 29; or where the claim has not been raised before the trial court in the first instance. *State* v. *Harrison,* supra, 482–83. "This court will not review issues of law that are raised for the first time on appeal." *State* v. *Harvey,* 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). We thus will not afford review of this unpreserved claim.

## B

The defendant posits, however, that in the event we conclude, as we have, that this claim was not properly preserved in the trial court, he is nonetheless entitled to review of his claim under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In support of his claim for *Golding* review, the defendant asserts that the improper admission of hearsay evidence under the theory of constancy of accusation violated his constitutional rights to a fair trial and to confrontation. We disagree.

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged

constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant to the particular circumstances." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

Here, the defendant cannot meet his burden of establishing that his claim, in fact, presents a violation of a fundamental constitutional right, and he, therefore, cannot satisfy the second prong of *Golding. State* v. *Golding,* supra, 213 Conn. 239–40. "[H]earsay claims do not automatically invoke constitutional rights to confrontation." *State* v. *Veal,* 201 Conn. 368, 376, 517 A.2d 615 (1986); *State* v. *Daley,* 11 Conn. App. 236, 238, 526 A.2d 560 (1987).

Our Supreme Court has consistently approved the admission into evidence of statements constituting constancy of accusation. *State* v. *Kelley,* 229 Conn. 557, 565, 643 A.2d 854 (1994), citing *State* v. *Parris,* 219 Conn. 283, 289–90, 592 A.2d 943 (1991); *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101 (1945); *State* v. *Kinney,* 44 Conn. 153, 156–57 (1876). "Constancy of accusation evidence is admissible 'when the complainant first has testified, in court, to the facts of the alleged occurrence . . . . She is then permitted to state that she made complaint to some other person. Thereupon, the person to whom she complained, out of court and in the absence of the defendant, is permitted to testify not only to the fact that a complaint was made but also to its details.' (Citation omitted.)" *State* v. *Kelley,* supra, 565, quoting *State* v. *Segerberg,* supra, 548–49.

Far from disadvantaging a defendant, the doctrine of constancy of accusation creates a wealth of opportunity for vigorous cross-examination to aid in the truth

seeking process. *State* v. *Kelley,* supra, 229 Conn. 566, citing *State* v. *Dabkowski,* 199 Conn. 193, 202, 506 A.2d 118 (1986). In effect, the defendant has two opportunities to cross-examine: first, he may cross-examine the victim on the basis of the additional information provided by the constancy witnesses; and, second, he may cross-examine the constancy of accusation witnesses themselves. *State* v. *Dabkowski,* supra, 202; see also *State* v. *Brigandi,* 186 Conn. 521, 533, 442 A.2d 927 (1982). Thus, admitting evidence under the theory of constancy of accusation does not implicate the defendant's right to confrontation. *State* v. *Brigandi,* supra, 553.

The defendant, having failed to satisfy the second prong of *Golding,* is not entitled to review of this unpreserved claim.

## III

The defendant claims that the trial court improperly charged the jury on the doctrine of constancy of accusation. Again, we disagree.

The defendant claims that the trial court improperly refused to charge the jury in accordance with his request to charge on the issue of constancy of accusation.[9] The defendant asserts that the trial court's refusal to follow his request to charge resulted in a fail-

---

[9] The defendant requested the trial court to instruct the jury concerning constancy of accusation as follows: "Another area that I am going to instruct you about is constancy of accusation. In most circumstances you would not be able to hear testimony from non-eyewitnesses regarding declarations made by [the victim] complaining about the incident. Because the allegations here, though, relate to an alleged sexual assault, you were allowed to hear such testimony. Such evidence is received to confirm the victim's testimony by showing constancy of accusation based on reasoning that it would be natural to make a complaint if a person had been attacked, and unnatural if the alleged sexual assault had not been committed. In deciding what weight you will give to this type of testimony you should consider how the accusation came to be made, the nature of the accusation itself,

ure to explicate the factors that the jury should consider in evaluating the weight to be afforded such corroborative testimony, especially the factor emphasized by the defendant as to whether it was natural for the victim to have made the complaint to other people at an earlier time. We note that the defendant does not claim that the trial court's instruction on this issue of constancy of accusation was an incorrect statement of the law.[10] We further note that the defendant does not provide us with an analysis to support his assertion that the failure to instruct as requested is constitutional in dimension.

how long a period of time elapsed before the accusation was made, and whether it would have been natural to have made the accusation to other people and at some earlier time."

[10] The charge by the trial court on the issue of constancy of accusation testimony was as follows: "Now, you've heard both attorneys, I think, mention the concept called constancy of accusation. . . . Ordinarily, as you may know, statements made out of court are not admissible because they lack the support of the oath which a witness takes in court. But, to that general rule, there are exceptions. And in this case, we have encountered one of them. The state offered evidence of statements made by the [victim] to these various officers in the case concerning the alleged crime. And these statements were admitted into evidence. The reason for this—[the victim] has testified here in court as to the offenses she claims were committed upon her. Now, if that was all you had before you, you would naturally ask yourself—Why did she keep silent about it until she came to court to testify? So, to corroborate her testimony, the state is permitted to prove that outside of court, she had earlier complained of the sexual acts done to her—or, the acts done to her. The evidence is admitted solely to corroborate her testimony in court. It is to be considered by you only in determining the weight and credibility you will give to her testimony . . . . And in determining the extent you find corroboration in her out-of-court statements, you should carefully consider all the circumstances under which they were made. You should particularly consider whether she has been constant and consistent in what she has said. To the extent that she has been consistent in what she has said, you may find her testimony in court to be corroborated or supported. To the extent she has been inconsistent in what she has said, you may consider that—the degree of inconsistency which you find, and may consider the reasons which you find for the inconsistency, in evaluating her testimony."

We have long held that a jury charge conforms with constitutional requirements if it provides jurors with a " 'clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present.' " *State* v. *Wolff,* 29 Conn. App. 524, 530, 616 A.2d 1143 (1992), quoting *State* v. *Avila,* 223 Conn. 595, 602, 613 A.2d 731 (1992). We conclude that the claim here represents only an assertion of instructional error since the defendant fails to provide us with an analysis to support a claim that it is constitutional in nature. Further, we have previously held that jury instructions concerning evidentiary matters are not, ordinarily, matters of constitutional concern. *State* v. *Ulen,* supra, 31 Conn. App. 37; see also *State* v. *Walton,* 227 Conn. 32, 64–65, 630 A.2d 990 (1993); *State* v. *Tatum,* 219 Conn. 721, 738, 595 A.2d 322 (1991).

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lee,* 32 Conn. App. 84, 104, 628 A.2d 1318 (1993). "When reviewing the court's instruction, our role is to determine whether, taken as a whole, [it] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *Id.*

"It is well established that when a proper request to charge is filed [pursuant to Practice Book § 852] and the trial court has failed to charge the jury in the exact language of the request, the test is whether the court's instructions properly covered the substance of the written request." (Internal quotation marks omitted.) *State* v. *Coleman,* 35 Conn. App. 279, 290, 646 A.2d 213 (1994). " 'The trial court is not under a duty in a criminal proceeding to charge in the identical language

requested if its charge [given to the jury] is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues.' " *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986), quoting *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978).

Here, the defendant sought to have the court explicate specific factors that the jury should consider in evaluating the weight that they would accord to the constancy of accusation testimony. The trial court properly instructed the jurors that the evidence could be considered only in their determination of the weight and credibility that they would afford to the testimony of the victim. The trial court further charged the jurors that in determining the weight that they would afford that testimony they "should carefully consider all the circumstances under which [it was] made." The questions of the delay between the attack and the report, and whether the victim would naturally have complained to other people earlier than she did may affect the weight of the evidence. By instructing the jurors that they were to consider all of the circumstances under which the statements were made, the trial court sufficiently gave to the jury the substance of the defendant's request to charge. All of the circumstances under which the statements were given, including the issue of delay or whether it was natural for the victim to have made an earlier complaint to other people, present a question of fact for the trier as to the weight to be given the testimony in question. See *State* v. *Brigandi,* supra,

186 Conn. 529; *State* v. *Parsons,* 28 Conn. App. 91, 106, 612 A.2d 73, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992).

We conclude that the instruction of the trial court as to the issue of the determination of the weight to be afforded to constancy of accusation testimony was an adequate and accurate discussion of the law and adequately covered the substance of the written request to charge. *State* v. *Harrell,* supra, 199 Conn. 269. The claim of the defendant is without merit.

## IV

Finally, the defendant asserts that the trial court improperly failed to inform him of possible noncompliance with a subpoena of the victim's counseling records. We decline to review this claim.

The following additional facts are necessary for an examination of this issue. Prior to trial, the defendant subpoenaed from the Susan B. Anthony Center all psychological and psychiatric counseling records of the victim. In response to the subpoena, the Susan B. Anthony Center sent to the trial court a number of documents under seal. After waiver by the victim, those documents were reviewed by the trial court, which determined that they contained nothing of relevance. The documents were then resealed.

Pending this appeal, the defendant moved to have the documents unsealed for appellate review. At that time, the defendant discovered by reviewing the documents that they contained only entries of meetings attended by the center's clients, including the victim, and the victim's intake form, which recounted her version of the alleged sexual assault. As a result, the defendant contends that the Susan B. Anthony Center "probably failed to comply fully with [the defendant's] subpoena."

The defendant contends that the trial court had an obligation to inform the defendant of possible noncompliance with his subpoena. He bases this assertion on the fact that such records are delivered to the trial court under seal and seen only by the trial court, which determines whether they may be of use to the defendant. We note, however, the total lack of legal authority offered by the defendant to support this proposition.

It is fatal to this claim that it was not preserved at trial, nor was it the subject of a posttrial motion for a new trial, petition for a new trial, or petition for a writ of habeas corpus, any of which might have had the result of properly raising the issue on the basis of facts discovered subsequent to trial. Practice Book §§ 530, 902 and 904; see, e.g., *State* v. *Hammond,* 221 Conn. 264, 604 A.2d 793 (1992); *Demers* v. *State,* 209 Conn. 143, 547 A.2d 28 (1988). The defendant makes no claim that the trial court improperly refused to reveal relevant material.

We also note that the defendant does not seek review of this unpreserved claim under *State* v. *Golding,* supra, 213 Conn. 233, or under the plain error doctrine, Practice Book § 4185. Even had the defendant properly requested review under *Golding,* it is unlikely that he could have prevailed. The defendant has not complied with the first prong of *Golding,* in that he has failed to provide us with a record that is adequate for us to afford review of his unpreserved claim. *State* v. *Golding,* supra, 240. "If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." Id. Here, the defendant has failed to provide a record adequate to review this claim properly. Thus, we will not afford review to this unpreserved

claim. *State* v. *Carter,* 34 Conn. App. 58, 92, 640 A.2d 610, cert. granted on other grounds, 229 Conn. 919, 644 A.2d 915 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.