NATIONAL ASSOCIATED PROPERTIES *v.* PLANNING
AND ZONING COMMISSION OF THE TOWN OF
NORTH BRANFORD
(13367)

DUPONT, C. J., and SPEAR and HENNESSY, Js.

Argued February 7—decision released May 9, 1995

*John M. Gesmonde,* town attorney, for the appellant
(defendant).

*Roy H. Scharf,* for the appellee (plaintiff).

DUPONT, C. J. This appeal arises from the defendant's denial of the plaintiff's affordable housing application. The plaintiff appealed that denial to the trial court, which sustained the appeal and ordered the defendant to grant the plaintiff's application. We affirm the judgment of the trial court.

Certain facts are relevant to this appeal. The plaintiff partnership, National Associated Properties, filed an application with the defendant partnership North Branford planning and zoning commission to create a new zoning designation in North Branford entitled "affordable housing district" and, further, to change the town's zoning map by applying the newly created zoning designation to 12.4 acres of land owned by the plaintiff.

The property owned by the plaintiff is zoned, in part, B-2 (central business) and, in part, RG-A (residence garden apartment). The site contains fifty-four[1] rental units and is served by public water and sewer. The proposed changes would allow the plaintiff to add forty new units to the property, for a total of ninety-four units, 20 percent of which would be rented at or below affordable levels.

The defendant held a public hearing on the application and denied the plaintiff's application. The defendant sent the plaintiff a letter stating that "[a]t its Regular Meeting of November 5, 1992, the North Branford Planning and Zoning Commission voted to deny [the plaintiff's application] . . . for reasons stated in the adopted resolution dated November 5, 1992 enclosed herewith."

The resolution, attached to the letter, listed ten findings and concerns of the defendant, including the fol-

---

[1] Although current zoning regulations permit only forty-four dwelling units on the site, the defendant was granted a variance, at an earlier time, to build fifty-four dwelling units.

lowing: "2. The proposed amendment, which is formulated for a specific site, contains language which is inconsistent with the intended goals of the affordable housing strategy for the Town of North Branford. Specifically, the proposed text amendment would permit the following: (A) Ability to construct an additional 40 dwelling units for a combined total of 95 dwelling units on the site. (B) A minimum of ten (10) percent of the total site acreage to be preserved as open space (as opposed to thirty (30) percent under existing affordable regulations). (C) A minimum of twenty (20) percent of the dwelling units to be restricted as affordable dwelling units (as opposed to twenty-five (25) percent under existing affordable regulations.) (D) A minimum length of twenty years as the set aside period for the affordable dwelling units (as opposed to perpetuity under existing affordable regulations).

"The introduction of new regulations and the elimination of the noted preferred language has a detrimental impact on the intended objectives of affordable housing regulations. Accordingly, the Commission is concerned with a proposed regulation that does not adequately protect the public health, safety, and welfare."[2]

---

[2] The other nine findings and concerns listed by the defendant are as follows:

"1. The North Branford Planning and Zoning Commission at their December 5, 1991 meeting adopted the Town's first affordable housing regulation. This regulation was carefully formulated to meet the goals and objectives of the affordable housing strategy for the Town of North Branford. Furthermore, the Commission approved a 42 Lot affordable housing development at their May 7, 1992 meeting which acknowledges the Commissions commitment and leadership role.

\* \* \*

"3. Because the applicant chose not to use the preferred language and petitioned to establish new regulations inconsistent. with the Town's strategy, [it] is the position of the Commission that the general public health interests cannot be protected by attempting to make reasonable modifications to the subject petition.

"4. The proposed text amendment, while intending to enable the Town to meet it's affordable housing obligation, conflicts with the Town's hous-

The resolution also stated: "After thorough review and discussion of each of the findings and concerns noted above [the commission denies the application]."

The plaintiff then appealed pursuant to General Statutes § 8-30g,[3] the affordable housing land use appeals

ing strategy which encourages the development of small scale projects scattered throughout the community.

"5. The proposed text amendment is inconsistent with the goals and objectives of the Plan of Development which encourages affordable housing opportunities which are compatible and harmonious with the use and enjoyment of nearby residential properties. Area residents at the public hearing expressed concern and opposition with traffic congestion associated with a development of this size.

"6. The maximum potential number of dwelling units permitted under the proposed regulation can place a negative impact on schools and other public services. The Superintendent of Schools in his letter to the Commission dated July 1, 1992 expressed concern with affordable housing developments which exceed current permitted size limits and fall within the same geographical areas of Town.

"7. It was noted by an area resident and documented by the Commission that the existing apartment complex currently contains 55 dwelling units which exceed the density permitted as of right for this particular piece of property. Because a variance was already granted to allow a higher density, the introduction of new regulations allowing a substantially higher density would only exasperate traffic and visual impacts to the neighborhood.

"8. The Commission noted for the record that a site Development Plan approval for a commercial shopping center was granted for the front portion of the property on July 27, 1989.

"9. The South Central Regional Council of Governments in their letter dated October 9, 1992 reported that the proposed amendment is inconsistent with the standards developed by the Commission.

"10. The petition conflicts with the proposed goals and objectives of the North Branford Center, Town Design District overlay in that no architectural standards and other site controls are provided in the proposed text which ensures new construction is compatible with historic and architecturally unique buildings in the center.

[3] General Statutes § 8-30g provides in pertinent part: "AFFORDABLE HOUSING LAND USE APPEALS PROCEDURE. (a) As used in this section: (1) 'Affordable housing development' means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in

procedure statute. After hearings and the submission of briefs, the trial court informed the parties of its intention personally to view the land at issue. Neither counsel objected to the trial court's intentions and both counsel were present at the time of the viewing.

The trial court then rendered judgment reversing the decision of the defendant. The court found that the reasons the defendant asserted for denying the plaintiff's application were not supported by sufficient evidence in the record. Further, the court found that the defendant had failed to sustain its burden of proof as to any of the considerations that would support a denial of the plaintiff's application under § 8-30g.

The defendant then petitioned this court for certification, which we granted. The defendant argues on

section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income, for at least twenty years after the initial occupation of the proposed development; (2) 'affordable housing application' means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing . . . .

"(b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section. . . .

"(c) Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it."

appeal that (1) the plaintiff's application does not qualify as an affordable housing application because it contains no provision concerning the sale of the affordable housing units, (2) the trial court should have denied the application because the plaintiff did not have approval from the water pollution control authority for the proposed development, and (3) the trial court improperly viewed the property.

I

The defendant first argues that the plaintiff's application is not an "affordable housing application" as defined by General Statutes § 8-30g because the application does not indicate that the plaintiff intended to restrict, by deed, the sale of the housing units.

Section 8-30g (a) (2) defines an affordable housing application as "any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing . . . ." An affordable housing development is defined by § 8-30g (a) (1) as "a proposed housing development (A) which is assisted housing or (B) in which not less than twenty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income, for at least twenty years after the initial occupation of the proposed development . . . ."

The defendant argues that the plaintiff's application should not be considered an affordable housing application, under the definition provided in § 8-30g, because the narrow language the plaintiff used to describe the restrictions to be placed in the deed did not include a restriction for the sale of the units.

The following language was included by the plaintiff in its proposed zoning amendment. "Promptly upon adoption of [the article] by The Planning & Zoning Commission there shall be recorded in the North Branford land records a document entitled 'Affordable Housing Development Restrictions,' executed by the owner of the AHD,[4] dated, witnessed and acknowledged in the manner required for deeds, containing a real estate description of the AHD substantially in accordance with Schedule A attached hereto, and containing substantially the following language:

" 'Not less than twenty percent of the dwelling units in the Affordable Housing District herein described shall be rented at, or below, rents which will preserve units as affordable housing, as hereinafter defined, for persons and families whose income is less than or equal to eighty percent of the area median income for North Branford, as determined by the United States Department of Housing and Urban Development, for twenty years after adoption by the North Branford Planning & Zoning Commission of Article 36 of the Zoning Regulations, or as to any building within said zone the building permit for which is issued after such adoption of Article 36, twenty years from the initial occupation thereof.

" 'The owner of the land and buildings within the affordable housing district may, during such twenty year period, change the designation of which units within the affordable housing district shall be maintained as affordable, provided that the minimum twenty percent set aside shall be maintained and the affordable housing district as a whole shall continue to comply with the provisions of these restrictions.

" 'Affordable housing means housing for which persons and families pay thirty percent or less of their annual

---

[4] We assume that this means affordable housing development.

income where such income is less than or equal to the area median income for North Branford as determined by the United States Department of Housing and Urban Development.

" 'These restrictions may be enforced by the Housing Authority of the Town of North Branford.' "

The defendant argues that there is nothing in these restrictions, or anywhere else in the proposed zoning regulation, that would preclude the plaintiff from converting the units into individual condominium units, which could be sold without restriction as to affordability. The defendant argues that in order to prevent the plaintiff from garnering a windfall through the sale of the units, we should interpret that part of § 8-30g (a) (1) (B) reading "sold or rented" as automatically requiring provisions in the deed for both the sale and rental of units. We need not decide this issue, however, because the language of the proposed deed, here, already restricts both the rental and the sale of the housing units.

"[I]n determining the effects of a deed or a written contract where the language is fairly susceptible of but one interpretation, the inquiry is not what the parties impliedly intended but what is the intent which is expressed, and that intent must be given effect. . . . The intention of the parties, gathered from their words, is gathered not by reading a single clause of the covenant but . . . by reading its entire context. . . . It is only where more than one interpretation is permissible that it is necessary for this court to seek the intent of the doubtful language in the light of surrounding circumstances presumably considered by the parties." (Citations omitted.) *Moore* v. *Serafin*, 163 Conn. 1, 10–11, 301 A.2d 238 (1972).

The unambiguous language of the proposed deed here states: "Not less than twenty percent of the dwelling

units in the Affordable Housing District herein described shall be rented at, or below, rents which will preserve units as affordable housing . . . for . . . twenty years . . . ." This explicitly requires that 20 percent of the entire complex be available for rent at affordable rates. The subsequent language in the deed refers to, "[t]he owner of the land," rather than the "owners of the land," and the words "as a whole" modify the words "the affordable housing district." We conclude, therefore, that the deed restriction should be interpreted to mean that there must be one owner for the entire complex. Thus, according to the plain and unambiguous language of the deed, the affordable housing district should always be sold as a block to one owner who must maintain 20 percent of the units as rental units at affordable rates for twenty years.

Any other interpretation but the plain and unambiguous one would be unworkable. The deed restriction was proposed by the applicant and does not attach to any particular 20 percent of the units and because the 20 percent is variable and capable of being applied to any 20 percent of the units, the applicant cannot divest himself of title to anything less than the whole. This must be so because if there is more than one owner, it would be unknown which of the owners would be responsible for maintaining 20 percent of the units as affordable housing rentals.[5] This deed, therefore, already contains restrictions for the rental and sale of the dwelling units and the defendant's concern is unfounded.[6]

[5] Although the deed restriction does not have to duplicate exactly the language of the proposed deed description, it must be substantially the same, and, therefore, there can be no allowable deviation from the restriction allowing the applicant to designate which of the ninety-five units shall be reserved as affordable housing units.

[6] The defendant also raised the question in his brief of whether an exact copy of the deed or document to be placed on the land records must be submitted to the commission with the affordable housing application. The

## II

The defendant next claims that the trial court should have upheld the decision of the defendant because the plaintiff had failed to obtain approval from the water pollution control authority prior to submitting its application to the defendant. The trial court, in its memorandum of decision, commented that it would not review this issue because this reason was not included in the official statement of reasons why the defendant denied the plaintiff's application. The defendant claims that there was no formal, official, collective statement of reasons for the commission's actions, and, therefore, it was improper for the trial court not to have reviewed the entire record, including the issue of sewer approval. The plaintiff counters that the resolution, attached by the defendant to the letter of rejection, contained the official statement of reasons why the defendant denied the application and that the court need not search the record for additional reasons that would support the denial.

It is well established that "where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision. . . . Where, however, the zoning commission fails to present a formal collective statement of reasons the court must search the entire record to find a basis for the com-

---

defendant, however, did not analyze this issue. "Both this court and our Supreme Court have declined to review . . . claims, deeming them to have been abandoned, when the defendant has not briefed and analyzed the claim." (Citations omitted.) *State* v. *Harrison*, 30 Conn. App. 108, 122–23, 618 A.2d 1381 (1993), aff'd, 228 Conn. 758, 638 A.2d 601 (1994). We choose not to review this claim.

mission's decision . . . ." (Citations omitted; internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* 228 Conn. 498, 513–14, 636 A.2d 1342 (1994).

The defendant sent a letter to the plaintiff that stated that the defendant denied the application "for reasons stated in the adopted resolution dated November 5, 1995." The resolution attached to the letter, provided ten reasons why the defendant denied the application, and stated that "[a]fter thorough review and discussion of each of the findings and concerns noted above [the commission denies the application]."

The defendant claims that the resolution was not a formal, official, collective statement of reasons for the defendant's denial of the plaintiff's application because the defendant did not adopt the resolution in its final motion. Rather, for the final motion, committee member Joseph Faughnan stated, "I move to deny [planning and zoning] Application 92-2, petition of National Associated Properties to amend the North Branford Zoning Regulations, by adding to Article III, Special Districts, a new district entitled Section 36, Affordable Housing District."

Prior to the vote on the final motion, however, the "draft resolution," as it was called at that time, was read into the record as the defendant's findings and concerns about the plaintiff's application. Chairman Dennis Hrabchak stated: "This is the findings, concerns. Do you have any other findings, concerns that we want to discuss." The committee members discussed other topics but did not amend the resolution, although they could have moved to do so prior to the vote. The defendant then sent the plaintiff the letter and resolution.

A letter of this type can constitute the kind of official, collective statement necessary for a trial court to

review the reasons for a commission's action. See generally *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 86, 626 A.2d 744 (1993). Here, the representations in the letter and resolution clearly indicate that the defendant intended the resolution to be a collective list of why it denied the plaintiff's application. Therefore, it was proper for the trial court to limit its review to those reasons listed in the resolution.

The defendant next argues that even if the resolution is considered to be the formal, official, collective statement of the commission, the trial court should have reviewed the issue of sewer approval because the defendant expressed concern in the resolution that the plaintiff's application, as written, did not adequately protect the public health, safety and welfare.

Although the defendant did express concerns about public health, safety and welfare, we interpret that language in the context in which it was used. Immediately before the public health and safety language, the resolution mentions an increase in density and a conflict with the town's previously established affordable housing regulation. The resolution then indicates that these factors could have a detrimental effect on the public health, safety and welfare.

These factors were addressed at length in the trial court's memorandum of decision. The court was not required to go behind the reasons listed by the defendant to examine every potential health and safety issue raised by the proposed amendment. See *DeMaria* v. *Planning & Zoning Commission*, 159 Conn. 534, 541, 271 A.2d 105 (1970). Rather, the trial court appropriately discussed the actual issues raised in the resolution, the increased density and the difference between the existing affordable housing regulation and the proposed affordable housing regulation. The defendant

makes no claim on appeal relating to the trial court's findings concerning these issues.

Finally, the defendant claims that approval from the water pollution control authority is critical to zone change approval regardless of the standard of review used by the trial court, and, therefore, as a matter of law, an applicant must have approval from the water pollution control authority prior to seeking zone change approval. We disagree.

"The language of § 8-30g . . . assumes that many different types of applications will be brought to many different types of agencies, as it broadly applies to '*any* application made to *a* commission *in connection with* an affordable housing development' (emphasis added); General Statutes § 8-30g (a) (2); and as it defines 'commission' as any 'zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planing authority.' General Statutes § 8-30g (a) (4)." *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 137, 653 A.2d 798 (1995). Section 8-30g does not list any order in which these applications must be brought and we will not read into the statute a requirement that a zone change application cannot be approved without prior approval from the water pollution control authority.

## III

Finally, the defendant argues that the trial court's examination of the property constituted an impermissible taking of additional evidence. The defendant failed to preserve this issue because it did not object to the trial court's statement that it intended to view the premises. See *State* v. *Beliveau*, 36 Conn. App. 228, 241, 650 A.2d 591 (1994), cert. granted on other grounds, 232 Conn. 910, 654 A.2d 354 (1995); *State* v. *Harvey*, 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). "The pur-

pose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it . . . ." (Internal quotation marks omitted.) *State* v. *Beliveau,* supra, 241. We will not afford review of this unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.