******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHELE L. MAYNARD *v.* THOMAS SENA
(AC 36345)

Sheldon, Prescott and West, Js.

*Argued February 5—officially released July 14, 2015*

(Appeal from Superior Court, judicial district of New London, Devine, J.)

*Jon L. Schoenhorn*, with whom were *Drzislav Coric*, and, on the brief, *Cody A. Layton*, for the appellant (plaintiff).

*Laura Pascale Zaino*, for the appellee (defendant).

*Opinion*

SHELDON, J. The plaintiff, Michele L. Maynard, brought this medical malpractice action against the defendant, Thomas Sena, a plastic surgeon, alleging negligence on the part of the defendant in his postoperative care and treatment of the plaintiff. The plaintiff claimed, inter alia, that the defendant breached the standard of care when, during a postoperative office visit, he drained a seroma[1] that had developed in the plaintiff's left breast without wearing surgical gloves.[2] The plaintiff claimed that the defendant's failure to wear surgical gloves when he drained the seroma proximately caused her to contract an infection, which led to a series of extensive and prolonged complications. Following a trial, the jury returned a verdict in favor of the defendant, and the court rendered judgment in accordance with that verdict. On appeal, the plaintiff claims that the trial court erred in admitting two types of defense evidence against her, over her objection, and that their prejudicial effect outweighed their probative value, to wit: (1) the defendant's testimony as to his habit of wearing gloves when performing surgical procedures in his office; and (2) testimony by the defendant's expert witness as to the training of medical professionals to use "universal precautions" when treating their patients. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history, are relevant to this appeal. Prior to the procedure that gave rise to this action, the plaintiff underwent three breast augmentation surgeries, in January, 1988, February, 1993 and February, 2005. In July, 2005, the plaintiff was diagnosed with cancer in her left breast, which she treated with chemotherapy and radiation. In late 2006, she developed capsular contracture in her left breast, which caused the implant in that breast to become hard and painful.[3]

The plaintiff first met the defendant to obtain treatment for her painful left breast on November 21, 2006. After discussing her options with the defendant, the plaintiff chose to have the implants removed from both of her breasts and replaced with new ones. The defendant performed that procedure at Lawrence & Memorial Hospital in New London on January 11, 2007. On January 17, 2007, the plaintiff went to the defendant's office for postoperative care. At that time, the plaintiff had developed a seroma in her left breast. Because seromas sometimes resolve without treatment, the defendant planned to see the plaintiff again in two to three weeks, but he advised the plaintiff to call him if the amount of fluid increased.

The plaintiff returned to the defendant's office on February 9, 2007, complaining of pressure and pain, in addition to swelling, in her left breast. Although the

defendant observed the swelling, he did not see any signs of infection. Nevertheless, in order to alleviate the plaintiff's symptoms of pressure and pain, the defendant drained the fluid, which was uninfected, from the plaintiff's left breast during her office visit that day. He did so by removing the stitches from the January 11 surgery and reopening the incision. When he finished draining the seroma, he replaced the stitches and bandaged the left breast.

The next morning, the plaintiff's left breast was swollen and painful. She also was unable to lift her left arm and had a fever. She was thus admitted to The William W. Backus Hospital in Norwich, where she was administered antibiotics and pain medication. After spending several days in the hospital, the plaintiff was diagnosed with an infection, which required the removal of the new implant from her left breast, and a series of additional medical procedures.

In her amended complaint dated November 20, 2013,[4] the plaintiff claimed, inter alia, that she contracted the infection during her visit to the defendant's office on February 9, 2007. She attributed her infection to the defendant's negligence, inter alia, in inserting his ungloved and unwashed finger into her left breast to drain the seroma. The jury rejected this claim, and all of the plaintiff's other claims, by returning a verdict in favor of the defendant. The court accepted the verdict and rendered judgment thereon. This appeal followed.

Because both of the plaintiff's claims on appeal concern the court's evidentiary rulings, we set forth, as a threshold matter, the standard by which we review the trial court's determinations concerning the admissibility of evidence. Generally, "[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Smith* v. *Greenwich*, 278 Conn. 428, 446–47, 899 A.2d 563 (2006).

As for claims that evidence should be excluded because its prejudicial effect outweighs its probative value, our standard of review, more particularly, is as follows: "Relevant evidence is excluded . . . when its probative value is outweighed by the danger of unfair prejudice. . . . A determination regarding undue prejudice is a highly fact and context-specific inquiry. [T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court . . . and is subject to reversal only [when] an abuse of discretion is manifest or injustice appears to have been done. . . .

"[T]here are [certain] situations [in which] the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the jur[ors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provides may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the [opposing party], having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Citation omitted; internal quotation marks omitted.) *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 696, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010). With these principles in mind, we address the plaintiff's claims in turn.

I

The plaintiff first claims that the trial court erred in permitting the defendant to testify as to his habit of wearing gloves when performing surgical procedures in his office.[5] She claims that the trial court improperly determined that the probative value of that testimony outweighed its prejudicial effect.[6] We disagree.

The following additional facts are relevant to this claim. During the defendant's direct examination at trial, he testified that he had performed surgical procedures every day that he had worked in his office over the course of his entire thirty year career, and that he employed the same "sterile technique" when performing every one of those procedures, regardless of the nature of the procedure. Following that testimony, the plaintiff objected to the defendant "testifying as to what he standardly does because the question is what did he do in this case. . . . Any evidence about what he standardly does is more prejudicial than it is probative. . . . If he remembers what he did in this case, let's have him testify. If he doesn't, then he shouldn't be able to testify to what he standardly does because . . . while it may be relevant, it may have some relevance, it may have some materiality, it's clearly more prejudicial than it is probative as to what he did in this case."

The court overruled the plaintiff's objection, explaining: "[E]vidence of a habit of a person or the retained practice of an organization is admissible to prove that the conduct of the person or organization on a particular occasion was in conformity of the habit or routine practice.

"The court clearly has the discretion to determine whether or not this evidence should be permitted in this case and ha[s] to weigh the probative value versus any prejudice. The court feels that there would not be any prejudice to the plaintiff in this particular case because you certainly have the ability to cross-examine

the doctor here today and apparently there was a deposition taken . . . of the doctor before where he didn't recall whether or not he had a glove on. So I think it's fair game in this particular case. There's no prejudice— excuse me. The probative value outweighs any prejudicial effect."

The defendant then described for the jury the process that he follows in performing surgical procedures in his office. He testified as to the sterilization of the various surgical instruments used and the use of a fenestrated drape to create a sterile environment in the office. He further testified that all of his sterile instruments would be laid out on a sterile tray, brought into the room in which he would perform the procedure, "and then I would put on the gloves." The defendant demonstrated how he puts the gloves on his hands. The defendant testified that, to drain a seroma, he generally would use something other than a finger to manipulate the incision to facilitate drainage, perhaps something smaller, like a clamp, because a finger might be obtrusive and actually impede the drainage. He testified that when he takes his gloves off following a surgical procedure there is usually a powder residue on his hands, which he then washes off. The defendant testified that he takes this sterile approach with all of the patients in his office, and has done so for thirty years. He testified that he could not conceive of having performed the procedure on the plaintiff without gloves, because doing so would put him at risk for contracting an infection "if she had something like hepatitis or even AIDS . . . ." The defendant testified that he had worn gloves for all of the surgical procedures that he had performed throughout his career, and that he would never have performed the Feburary 9, 2007 procedure to drain the seroma in the plaintiff's left breast without wearing gloves.

On appeal, the plaintiff claims that the trial court erred in permitting the defendant to testify that he has worn gloves for every procedure that he has ever performed in his office over his thirty year career. She renews her claim that the probative value of such habit evidence was outweighed by its prejudicial effect because it allegedly changed the focus of the jury's inquiry from whether the defendant wore gloves when he drained her seroma on February 9, 2007, to whether he generally wears gloves when performing similar procedures in his office. The plaintiff argues that the "defendant could have done this procedure a hundred times and did it right ninety-nine of those times. This case focuses on the one time he did it wrong." She contends that, "[a]s a result of allowing the defendant to testify to his habit, the actual issue to be decided of whether or not the defendant wore a glove on February 9 [was] pushed into obscurity, and the inquiry became whether or not the defendant would ever under any circumstances in his career not wear gloves when conducting an in-office procedure." We disagree.

Section 4-6 of the Connecticut Code of Evidence provides: "Evidence of the habit of a person or the routine practice of an organization is admissible to prove that the conduct of the person or the organization on a particular occasion was in conformity with the habit or routine practice." "[H]abit is a person's regular practice of responding to a particular kind of situation with a specific type of conduct. . . . [H]abit . . . refer[s] to a course of conduct that is fixed, invariable, and unthinking, and generally pertain[s] to a very specific set of repetitive circumstances . . . ." (Citation omitted; internal quotation marks omitted.) Conn. Code Evid. §4-6, commentary.

"Testimony as to the habit or practice of doing a certain thing in a certain way is evidence of what actually occurred under similar circumstances or conditions. . . . Evidence of *a regular practice* permits an inference that the practice was followed on a given occasion." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Hubbard*, 32 Conn. App. 178, 185, 628 A.2d 626, cert. denied, 228 Conn. 902, 634 A.2d 296 (1993).

The plaintiff does not disagree that the defendant's testimony that he wore gloves every time he performed a surgical procedure in his office during his thirty year career was proper habit evidence, as contemplated by our rules of evidence. The plaintiff argues, however, that that testimony obscured the issue to be determined by the jury because it shifted the focus of the inquiry from whether the defendant wore gloves when he drained the plaintiff's seroma on February 9, 2007, to whether he had the habit of wearing gloves when performing surgical procedures in his office. The record belies the plaintiff's argument that the defendant's testimony caused any such confusion. The plaintiff made it clear through her inquiry of the defendant, as well as in her closing argument to the jury, that the defendant's testimony that he always wore gloves when performing surgical procedures was not conclusive evidence that he, in fact, did so when draining her seroma on February 9, 2007. The defendant's testimony as to his regular practice of wearing gloves when performing office procedures supported an inference that he wore gloves when he drained the plaintiff's seroma on February 9, 2007. The jury could have believed that it was the defendant's habit always to wear gloves when performing surgical procedures, but that he failed to do so on February 9, 2007. We are unpersuaded by the plaintiff's claim that the defendant's habit testimony confused the issues presented to the jury, or created a collateral inquiry for the jury to consider. We thus conclude that the trial court did not err in determining that such testimony was not more prejudicial than probative.

II

The plaintiff also claims that the court erred in permitting the defendant's expert witness, Richard Restifo, a plastic surgeon, to testify on redirect examination as to the concept of "universal precautions." Restifo explained that all medical professionals are taught to use "universal precautions" when dealing with their patients to avoid potentially dangerous contact with the patients' bodily fluids. They are trained, in short, to "treat every patient as though they have a potentially serious communicable disease."[7] The plaintiff argues that the court erred in admitting Restifo's testimony regarding "universal precautions" because: (1) such testimony was outside the scope of her cross-examination of Restifo, and, thus, resulted in unfair surprise to her; and (2) it shifted the focus of the jury's inquiry from whether the defendant wore gloves when treating the plaintiff on February 9, 2007, to whether doctors are trained to do so.[8] We disagree.

Restifo testified that the defendant did not breach the applicable standard of care in his care and treatment of the plaintiff. Specifically, as it pertains to this claim, Restifo testified, inter alia, that the defendant utilized proper sterile technique in draining the plaintiff's seroma. On cross-examination, the plaintiff inquired about the differences between performing a surgical procedure in an operating room and performing it in an examination room in an office. Plaintiff's counsel asked Restifo, inter alia, if there is a requirement that a doctor wash his or her hands and put on gloves prior to performing a surgical procedure in an operating room. Restifo answered in the affirmative. Plaintiff's counsel then suggested that no such requirement exists when performing such a procedure in an office examination room, but Restifo disagreed as follows: "Well, sure, there's a requirement. . . . [I]t's not written or stated, but I find it hard to imagine that any doctor or plastic surgeon would cut a patient with a knife without having gloves on. It just doesn't ring true to me that that could ever happen."[9]

On redirect examination, defense counsel asked Restifo to define the term "universal precautions." The plaintiff objected to that inquiry on the ground that it was beyond the scope of his cross-examination of Restifo. The plaintiff further explained his objection as follows: "It's not what [the defendant] was expected to do; it's what he did and what he did is in his notes and in his testimony. It's not what he's expected to do . . . ." After the jury was excused the plaintiff continued: "[I]n this case what's important is what actually occurred, not what may have occurred or what should have occurred, other than what's expressed in opinions, and there was no opinion about what he's getting into now." The court overruled the plaintiff's objection, concluding that the defendant's inquiry was not outside the scope of cross-examination, and that the testimony was

relevant to whether, in Restifo's opinion, based on all of the information he had reviewed, his training, and his experience, there had not been a breach of the standard of care in the way the defendant performed the procedure at his office on February 9, 2007.

We agree with the trial court that the defendant's inquiry regarding the concept of "universal precautions" was within the scope of the plaintiff's inquiries on cross-examination, and, thus, that it could not have caused her any unfair surprise. Not only did that concept relate to the standard of care, as described by Restifo in his expert testimony, but it explained the basis for that standard of care. On cross-examination, Restifo testified that wearing gloves when performing surgery is so fundamental that he could not conceive of a surgeon not doing so. On redirect examination, defense counsel simply sought to explain the basis for that opinion, which was that all doctors are taught to treat every patient as if he has a communicable disease, and to take the necessary protective measures to prevent its transmission. Restifo's testimony did not confuse the issues or change the jury's inquiry, as the plaintiff argues, because he did not testify that the defendant wore gloves when he drained the plaintiff's seroma on February 9, 2007. Indeed, Restifo acknowledged, on cross-examination, that the surgical note of the February 9, 2007 procedure did not contain a notation indicating that the defendant had worn gloves when performing that procedure. Restifo's testimony regarding "universal precautions" was clearly offered to explain what surgeons are taught and why they are taught it, not necessarily what the defendant did on the office visit in question when he drained the plaintiff's seroma. We disagree with the plaintiff that Restifo's testimony confused the jury or shifted its focus away from what the defendant actually did on February 9, 2007. We thus conclude that the court did not abuse its discretion in admitting the challenged testimony.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] A seroma is a collection of fluid.

[2] Although the plaintiff alleged additional breaches of the standard of care by the defendant and a lack of informed consent, the evidentiary claims raised in this appeal pertain only to the allegation that the defendant did not wear gloves when draining the plaintiff's seroma.

[3] Capsular contracture is a painful condition whereby scar tissue that naturally forms around a breast implant thickens and constricts the implant. Radiation increases the chance of developing a contracture.

[4] This operative complaint was filed by the plaintiff to conform to the evidence adduced at trial.

[5] The plaintiff claims for the first time on appeal that habit evidence should not be admissible in medical malpractice actions. Because she did not raise this issue before the trial court, she is precluded from doing so now. See *Scandariato* v. *Borrelli*, 153 Conn. App. 819, 832–33, 105 A.3d 247 (2014).

[6] The plaintiff also argues that the defendant failed to establish an adequate foundation for the admission of habit evidence. She argues that an adequate foundation requires two components. First, she contends that the witness must establish that he has no recollection of the actual event at issue. In support of this argument, which appears in a single paragraph of her brief,

the plaintiff cites a single case from the Georgia Court of Appeals. She cites no Connecticut authority on the issue, nor are we aware of any. In any event, because the record is replete with evidence that the defendant did not remember the specifics of the February 9, 2007 procedure, any such requirement was fully satisfied. Second, the plaintiff argues that the witness must "be required to demonstrate some form of frequency and specificity regarding the alleged habit if evidence of such is to be admitted." The plaintiff failed to make this claim before the trial court, and, thus, we have no occasion to review it on appeal. See *Scandariato* v. *Borrelli*, 153 Conn. App. 819, 832–33, 105 A.3d 247 (2014). We note, however, that any such requirement is fully satisfied on this record, which contains ample evidence that the defendant used the same "sterile technique," including wearing gloves, every day for thirty years.

[7] Restifo testified that: "Universal precautions means to assume that every patient—and for that matter, every healthcare provider—has a potentially communicable blood borne disease, or sputum borne or fluid borne [disease].

"So universal precautions [are] designed to prevent the doctor and the patient from intermingling their blood, their sputum, their sweat; you know, any of their body fluids. You should take whatever precautions are necessary [such as] gloving, so that you don't come in contact with the patient's blood and your blood doesn't come in contact with her."

[8] The plaintiff also claims that Restifo's testimony on "universal precautions" was more prejudicial than probative because he stated that the risk of contracting communicable diseases was one reason that all doctors are taught to always wear gloves when performing surgical procedures, and that, when explaining that risk, he mentioned hepatitis and AIDS by way of example, and the mention of those diseases "irreparably polluted" the jury. Because the plaintiff did not raise this objection before the trial court, she cannot do so here. See *Scandariato* v. *Borrelli*, 153 Conn. App. 819, 832–33, 105 A.3d 247 (2014).

[9] The plaintiff did not ask that this statement be stricken from the record.